**EXHIBIT 1**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

---

In re:

**BLACKJEWEL, L.L.C.,** *et al.*
                        **Debtors**
-----------------------------------------------------------
**DAVID ENGELBRECHT, JOSIAH
WILLIAMSON, GREGORY MEFFORD on behalf
of themselves and all others similarly situated,**

                            **Plaintiffs,**

**v.**

**BLACKJEWEL, L.L.C.,**

                           **Defendants.**
-----------------------------------------------------------

**Chapter 11
Case No. 19-bk-30289
(Jointly Administered)**


**Adversary Proceeding
No. 3:19-ap-03002**

---

In re:

**BLACKJEWEL, L.L.C.,** *et al.*
                        **Debtors**
-----------------------------------------------------------
**SHAWN ABNER, JACOB HELTON, AND BILLY
HATTON on behalf of themselves and all others
similarly situated,**

                            **Plaintiffs,**

**v.**

**BLACKJEWEL, L.L.C.,  REVELATION
ENERGY, LLC, LEXINGTON COAL CO., LLC,
JEFF HOOPS, SR., JEFFERS A. HOOPS, II,**

                           **Defendants.**
-----------------------------------------------------------

**Chapter 11
Case No. 19-bk-30289
(Jointly Administered)**


**Adversary Proceeding
No. 3:19-ap-03003**

**NOTICE OF HEARING ON JOINT MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS AND PROPOSED CLASS REPRESENTATIVES,
PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULES 7023 AND 9019 TO: (I) APPROVE THE SETTLEMENT AGREEMENT
PURSUANT TO BANKRUPTCY RULE 9019, (II) PRELIMINARILY APPROVE THE
SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 7023, (III)
CERTIFY THE CLASS FOR SETTLEMENT PURPOSES, INCLUDING THE
APPOINTMENT OF CLASS COUNSEL AND THE CLASS REPRESENTATIVES, (IV)
APPROVE THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE
SETTLEMENT, (V) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL
APPROVAL OF THE SETTLEMENT AGREEMENT, (VI) FINALLY APPROVE THE
SETTLEMENT AGREEMENT FOLLOWING THE FAIRNESS HEARING, AND (VII)
<u>GRANT RELATED RELIEF</u>**

       **PLEASE TAKE NOTICE** that pursuant to the *Order Establishing Certain Notice and Case Management Procedures* [ECF No. 2217] (the "<u>Case Management Order</u>") that a hearing (the "<u>Hearing</u>") to consider the *Joint Motion and Memorandum of Law in Support of Defendants and Proposed Class Representatives, Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 7023 and 9019 to: (I) Approve the Settlement Agreement Pursuant to Bankruptcy Rule 9019, (II) Preliminarily Approve the Settlement Agreement Pursuant to Bankruptcy Rule 7023, (III) Certify the Class for Settlement Purposes, Including the Appointment of Class Counsel and the Class Representatives, (IV) Approve the Form and Manner of Notice to Class Members of the Settlement, (V) Schedule a Fairness Hearing to Consider Final Approval of the Settlement Agreement, (VI) Finally Approve The Settlement Agreement Following The Fairness Hearing, And (Vii) Grant Related Relief* (the "<u>Motion</u>") filed on September 1, 2020 in the above captioned bankruptcy cases shall be held before the United States Bankruptcy Court for the Southern District of West Virginia (the "<u>Bankruptcy Court</u>") on October 9, 2020 at 9:30 a.m. (Prevailing Eastern Time).

       **PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted pursuant to the procedures in the Case Management Order as may be modified by further orders of the Court from time to time. **<u>Any party wishing to be heard must comply with the terms and provisions of the Case Management Order.</u>**

       **PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the relief requested in the Motion must be in writing and conform to the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court, and the procedures described in the Case Management Order. Any responses or objections shall be served in an accordance with the Case Management Order on the following parties: (i) counsel for the Debtors, Squire Patton Boggs (US) LLP, 201 E. Fourth Street, Suite 1900, Cincinnati, Ohio 45202, Attn: Stephen D. Lerner (<u>stephen.lerner@squirepb.com</u>), Nava Hazan (<u>nava.hazan@squirepb.com</u>) and Travis A. McRoberts (<u>travis.mcroberts@squirepb.com</u>); and (ii) local counsel for the Debtors, Supple Law Office, PLLC, 801 Viand Street, Point Pleasant, West Virginia 25550, Attn: Joe M. Supple (<u>joe.supple@supplelawoffice.com</u>).

Any response must be filed and served no later than on **<u>October 2, 2020 at 11:59 p.m. (Prevailing Eastern Time) (the "Objection Deadline")</u>**. If you or your attorney do not take these steps, the

Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.

Respectfully submitted, this 1st day of September 2020.

**SUPPLE LAW OFFICE, PLLC**

Joe M. Supple, Bar. No. 8013
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
Facsimile: 304.675.4372
joe.supple@supplelawoffice.com

– and –

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Stephen D. Lerner*
Stephen D. Lerner (admitted *pro hac vice*)
Nava Hazan (admitted *pro hac vice*)
Travis A. McRoberts  (admitted *pro hac vice*)
201 E. Fourth St., Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
nava.hazan@squirepb.com
travis.mcroberts@squirepb.com

*Co-Counsel to the Debtors and
Debtors-in-Possession*

3

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re:<br><br>**BLACKJEWEL, L.L.C.,** *et al.*<br>　　　　　　　　　　　**Debtors**<br>-----------------------------------------------------------<br>**DAVID ENGELBRECHT, JOSIAH WILLIAMSON, GREGORY MEFFORD** on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　**Plaintiffs,**<br><br>v.<br><br>**BLACKJEWEL, L.L.C.,**<br><br>　　　　　　　　**Defendants.**<br>----------------------------------------------------------- | **Chapter 11**<br>**Case No. 19-bk-30289**<br>**(Jointly Administered)**<br><br><br>**Adversary Proceeding**<br>**No. 3:19-ap-03002** |
| In re:<br><br>**BLACKJEWEL, L.L.C.,** *et al.*<br>　　　　　　　　　　　**Debtors**<br>-----------------------------------------------------------<br>**SHAWN ABNER, JACOB HELTON, AND BILLY HATTON** on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　**Plaintiffs,**<br><br>v.<br><br>**BLACKJEWEL, L.L.C.,  REVELATION ENERGY, LLC, LEXINGTON COAL CO., LLC, JEFF HOOPS, SR., JEFFERS A. HOOPS, II,**<br><br>　　　　　　　　**Defendants.**<br>----------------------------------------------------------- | **Chapter 11**<br>**Case No. 19-bk-30289**<br>**(Jointly Administered)**<br><br><br>**Adversary Proceeding**<br>**No. 3:19-ap-03003** |

**JOINT MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS AND PROPOSED CLASS REPRESENTATIVES, PURSUANT TO
SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 7023 AND
9019 TO: (I) APPROVE THE SETTLEMENT AGREEMENT PURSUANT TO
BANKRUPTCY RULE 9019, (II) PRELIMINARILY APPROVE THE SETTLEMENT
AGREEMENT PURSUANT TO BANKRUPTCY RULE 7023, (III) CERTIFY THE
CLASS FOR SETTLEMENT PURPOSES, INCLUDING THE APPOINTMENT OF
CLASS COUNSEL AND THE CLASS REPRESENTATIVES,  (IV) APPROVE THE
FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE SETTLEMENT,
(V) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE
SETTLEMENT AGREEMENT, (VI) FINALLY APPROVE THE SETTLEMENT
AGREEMENT FOLLOWING THE FAIRNESS HEARING, AND (VII) GRANT
RELATED RELIEF**

Plaintiffs David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob

Helton, and Billy Hatton (the "Plaintiffs"), together with Blackjewel, L.L.C. and Revelation

Energy, LLC (together, the "Debtors" or "Debtor-Defendants") and Lexington Coal Co., LLC,

Jeff Hoops, Sr., and Jeffery A. Hoops, II (the "Non-Debtor Defendants" and, collectively with the

Debtor-Defendants, the "Defendants" and, together with the Plaintiffs, the "Parties") by and

through their respective counsel, hereby jointly submit this Joint Motion and Memorandum of Law

in Support, pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code"),

Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 23

of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable hereto by Bankruptcy

Rule 7023, for the entry of an Order: (1) approving the Settlement, Release, and Allowance of

Claim Agreement (the "Settlement Agreement");[2] (2) preliminarily approving the Settlement

Agreement pursuant to Bankruptcy Rule 7023; (3) certifying the WARN Class for settlement

purposes only, including the appointment of Lankenau & Miller, LLP, The Gardner Firm, P.C.,

Petsonk PLLC,  Mountain State Justice, Inc. and Pillersdorf, DeRossett and Lane Law Offices as

Class Counsel and David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob

---

[2] A copy of the Settlement Agreement is attached hereto as Exhibit A.  Unless otherwise defined herein, capitalized
terms herein shall have the meaning provided to them in the Settlement Agreement.

Helton, and Billy Hatton as Class Representatives; (4) approving the form and manner of notice

of the Settlement to the members of the Class (the "<u>Class Notice</u>"); (5) scheduling a fairness

hearing to consider final approval of the Settlement Agreement (the "<u>Fairness Hearing</u>"); (6)

finally approving the Settlement Agreement following the fairness hearing (the "<u>Final Settlement</u>

<u>Order</u>"); and (7) granting related relief (the "<u>Joint Motion</u>").  In support of the Joint Motion, the

Parties respectfully state:

## <u>INTRODUCTION</u>

1.     This Court should approve the Settlement Agreement.  The Plaintiffs have sued the

Defendants in the above-captioned adversary proceedings (together, the "<u>WARN Action</u>") for

allegedly failing to provide notice as required by the Worker Adjustment and Retraining Act, 29

U.S.C. §§ 2101, <u>et</u> <u>seq</u>. (the "<u>WARN Act</u>"), before ordering alleged mass layoffs and/or plant

closings on or about July 1, 2019 and thereafter, and for other wage and hour and other

employment and employee benefits-related claims.  In exchange for a full release of any claims

under the WARN Act and other claims asserted in the WARN Action, (i) the Debtor-Defendants

have agreed that the Class Members will have an allowed priority claim pursuant to 11 U.S.C. §

507(a)(4) and (a)(5) of the Bankruptcy Code, as further described herein and (ii) the Non-Debtor

Defendants have agreed to make a cash payment of $125,000, which will be distributed from a

Qualified Settlement Fund established by the Class Counsel in accordance with the terms of the

Settlement Agreement.

2.     The Parties believe that the Settlement Agreement is fair and reasonable and that

further litigation of the WARN Action would be protracted and expensive, and its outcome

uncertain.  Indeed, Class Counsel contends that the events that led to the failure of the Debtors'

business were foreseen and/or foreseeable and that none of the WARN Act's affirmative defenses

would provide an exception to the Defendants' liability under the statute. The Debtors and the Non-Debtor Defendants, however, dispute that the failure of the Debtors' business was foreseen and/or foreseeable and believes that several affirmative defenses under the WARN Act would be available to them. Thus, a trial on the merits would require both sides to engage in extensive expert and non-expert discovery at significant expense, with inherently uncertain results at trial.

3.      In light of these factors, the Parties have determined that the terms of the Settlement Agreement are well within the range of reasonableness. Accordingly, the Parties respectfully submit that the Bankruptcy Court should approve the Settlement under Bankruptcy Rule 9019. For the same reasons, the Settlement Agreement is also fair and reasonable to the Class Members.

4.      It is also appropriate to certify the Class for settlement purposes and appoint Class Counsel. As set forth below, for purposes of the Settlement, the Parties agree that the Class meets all of the requirements of Civil Rule 23 and that Class Counsel is competent and experienced.

5.      The Parties request a two-step approval process to facilitate notice to the Class Members. After the preliminary approval of the Settlement Agreement and the form of the Class Notice, Class Counsel will provide the Class Notice to each Class Member, which describes the Settlement Agreement, and informs the Class Members of their right to opt-out of the Class or object to the Settlement Agreement, and of the deadlines for opting-out and/or objecting.

6.      After service of the Class Notice, the Parties request that the Bankruptcy Court hold a Fairness Hearing within sixty (60) days of entry of the preliminary approval order, at which time the Parties will request final approval of the Settlement Agreement.

7.      Based on the foregoing, and as set forth more fully below, the Parties submit that the Bankruptcy Court should approve the Settlement Agreement and the procedures proposed in this Joint Motion.

## JURISDICTION

8.     The United States Bankruptcy Court for the Southern District of West Virginia (the "Bankruptcy Court") has jurisdiction over the Joint Motion under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, and Bankruptcy Rules 7023 and 9019.

## BACKGROUND

9.     On July 1, 2019 and July 24, 2019 (the "Petition Date"), the Debtors and certain affiliates initiated the Bankruptcy Case by filing voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code.  Prior to the Petition Date, the Debtors employed approximately 1,700 employees, both hourly and salaried, including the Class Members, in their business operations.

10.     Plaintiffs contend that, on or about July 1, 2019, and thereafter, the Debtors terminated the Plaintiffs and most of the workforce who worked at the Debtors' facilities in the Central Appalachian Coal Basin in West Virginia, Virginia and Kentucky (the "Eastern Division," encompassing approximately 1,100 employees) and in the Powder River Basin in Wyoming (the "Western Division," encompassing approximately 600 employees).  The Plaintiffs allege that, on or about July 1, 2019, and thereafter, the Debtors terminated the employment of Plaintiffs and more than half of their employees, without providing the notice required under the WARN Act.

11.     On July 9, 2019 and thereafter, the Plaintiffs filed their Class Action Adversary Proceeding Complaints[3] (the "WARN Action") against the Defendants, in which the Plaintiffs

---

[3] The class WARN Act adversary proceedings which have been consolidated for the purposes of the Settlement are: *David Engelbrecht, Josiah Williamson and Gregory Mefford, on their own behalf and on behalf of all other persons similarly situated v. Blackjewel, LLC*; Adversary Proceeding No. 19-ap-3002 and *Shawn Abner, Jacob Helton and*

asserted a class action claim under the WARN Act alleging that the Defendants as a "single employer" violated the WARN Act by implementing alleged plant closings or mass layoffs, without providing sixty (60) days advance written notice thereof.  The Class Representatives further asserted that, as a consequence of this alleged failure, the Class Members have a claim against the Defendants for damages for the alleged sixty (60) day violation period.  The WARN Action also includes wage and hour and other employment and employee benefits-related claims for the putative class members.  Finally, the WARN Action asserts that the alleged damages are entitled to priority status pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code up to the statutory maximum amount per claimant of $13,650.00 per employee pursuant to 11 U.S.C. § 507(a)(4) of the Bankruptcy Code (the "Statutory Cap").

12.     The Defendants deny these allegations and further deny that the Plaintiffs are entitled to any relief from them under any claims asserted in the WARN Action.

13.     On September 20, 2019, the Bankruptcy Court entered an order for the Parties to commence mediation with Magistrate Judge Omar Aboulhosn [D.I. 17, Case No. 19-ap-03002].

14.     On October 25, 2019, the Debtors provided the Plaintiffs with relevant wage information concerning the hourly and salaried employees whose employment Plaintiffs contend was terminated by the Debtors.

15.      On November 4, 2019, the parties mediated this matter before Magistrate Judge Omar Aboulhosn and although the WARN Action was not resolved at mediation, the Parties have been working since that date toward a resolution of this matter.  Following extended settlement negotiations, conducted in good faith and at arms' length, the Parties reached agreement on a

---

*Billy Hatton individually and on behalf of others similarly situated v. Blackjewel, LLC, Revelation Energy, LLC, Lexington Coal Co., LLC, Jeff Hoops, Sr., Jeffery A. Hoops, II*, Adversary Proceeding No. 19-ap-03003.

compromise that will resolve the WARN Action, subject to the Bankruptcy Court approval, according to the terms forth therein.

## ESSENTIAL TERMS OF THE PROPOSED SETTLEMENT

16.     The Parties have reached an agreement, subject to Bankruptcy Court approval, the terms of which have been set out in the Settlement Agreement.[4]  The Settlement Agreement provides that, upon the Effective Date, the Class shall be awarded (a) an allowed priority claim jointly and severally against the Debtors, as set forth on Schedule 1 to the Settlement Agreement, pursuant to 11 U.S.C. § 507(a)(4) and (a)(5), equal to sixty percent (60%) of sixty (60) days' wages and benefits for each Class member, in the total aggregate amount of $14,630,825.63, and an allowed priority wage claim under 11 U.S.C. § 507(a)(4) in the aggregate amount of $2,711,494.11 for up to eight (8) days of pay for each Class Member in resolution of their wage claims (together, the "Allowed Bankruptcy WARN and Wage Claims"), which amount shall be subject to the statutory cap of $13,650.00 per employee pursuant to 11 U.S.C. § 507(a)(4) (the "Statutory Cap");[5] and (b) a cash payment (the "Cash Payment") from the Non-Debtor Defendants totaling $125,000 ($75,000 to be paid by Jeff Hoops, Sr. and Jeffery A. Hoops, II, jointly and severally, with the remaining $50,000 to be paid by Lexington Coal Co., LLC).

17.     The distributions from the Debtors' estates (the "Estates") on account of the Allowed Bankruptcy WARN and Wage Claims (the "Estates Distribution Payments") will be made by the Debtors in accordance with the priority scheme established by the Bankruptcy Code to a qualified settlement fund to be established by Class Counsel in conformity with Internal Revenue Code § 468B (the "Qualified Settlement Fund") pursuant to written instructions to be provided by

---

[4] This Joint Motion contains a summary of certain provisions of the Settlement Agreement.  In the event of any conflict, the Settlement Agreement itself shall govern over any description contained in this Joint Motion.
[5] To the extent any Class Members' Allowed Bankruptcy WARN and Wage Claims exceed the Statutory Cap, the balance shall be deemed a general unsecured claim.

Class Counsel. The Class acknowledges that the Allowed Bankruptcy WARN and Wage Claims is an allowed claim to be paid in accordance with the priority scheme established by the Bankruptcy Code and that such claim may or may not be paid depending on the distributions available to creditors of the Debtors' Estates and may not be paid or funded in full.

18.     The Cash Payment shall be made via wire transfer by the Non-Debtor Defendants within five (5) business days of the Effective Date to the Qualified Settlement Fund pursuant to written instructions to be provided by Class Counsel.  The name of the Qualified Settlement Fund shall be *Engelbrecht v. Blackjewel QSF*, and Class Counsel or the Administrator of the Qualified Settlement Fund shall provide the Debtors and the Non-Debtor Defendants with a W-9 form for the Qualified Settlement Fund to enable the Estates Distribution Payments and the Cash Payment, respectively to the Qualified Settlement Fund.  The other essential terms of the Settlement Agreement are as follows:

   i.   A class will be certified for settlement purposes only (the "Class").  The Class will be comprised of all persons who were employed by the Debtors at facilities located in the Eastern Division and the Western Division and who ceased working for the Debtors on or after July 1, 2019 solely, and who do not file a timely request to opt out of the Class.  The Class excludes the Debtors' employees who were brought back to work by the Debtors between the dates of July 1, 2019 and November 4, 2019.

   ii.  The Debtors represent that, to the best of their knowledge, information and belief and based solely upon the Debtors' books and records, all of the former employees (along with their last known addresses and wage information) who are Class Members are listed on Schedule 1 to the Settlement Agreement.

   iii. Lankenau & Miller, LLP, The Gardner Firm, P.C., Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf, DeRossett and Lane Law Offices shall be appointed class counsel ("Class Counsel") for the Class created under the Settlement Agreement.

   iv.  David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton shall be appointed Class Representatives for the Class created under the Settlement Agreement.

v.    The Settlement Agreement shall become effective upon the date on which the Final Settlement Order becomes a "Final Order" (the "Effective Date"). The Final Settlement Order shall become a Final Order when the time for taking an appeal has expired or, in the event an appeal has been taken, the day the Final Settlement Order has been affirmed with no further right of appeal.

vi.   The Debtors agree to provide Class Counsel with updates every six (6) months as to (i) the amount of funds in the Debtors' Estates as of such date, (ii) the amount of outstanding claims asserted by creditors holding secured and administrative claims, and (iii) any potential recovery the Estates may obtain as of such date.

vii.  The Plaintiffs acknowledge that the payment of the Allowed Bankruptcy WARN and Wage Claims will not be made as of the effective date of a proposed plan, if any, but will be paid if and when money comes to the Estates in accordance with the priority scheme established by the Bankruptcy Code depending on numerous factors and circumstances in the Bankruptcy Case. The Plaintiffs also agreed that they will support any plan proposed by the Debtors.

viii. Class Counsel shall act as the trustee of the Qualified Settlement Fund. Class Counsel shall cause each Class Member's distribution to be paid from the Qualified Settlement Fund, and shall transmit distributions via first class U.S. Mail to the Class Members at their last known address as indicated on Schedule 1 to the Settlement Agreement (or to such other address as the Class Members may indicate to Class Counsel or which Class Counsel may locate), in accordance with applicable law. By accepting his or her portion of the Settlement Fund, each Class Member agrees that he or she will be solely responsible for any and all tax liabilities stemming from the payment of his or her claim under the Settlement Agreement. The Debtors and Plaintiffs agree that the Estates Distribution Payments shall be the only payments to be made by the Debtors under this Settlement Agreement. The Non-Debtor Defendants and Plaintiffs agree that the Cash Payment shall be the only payment to be made by the Non-Debtor Defendants under this Settlement Agreement. Under no circumstances shall the Debtors or their Estates or Non-Debtor Defendants be required under the Settlement to pay any sums or other consideration in addition to the Estates Distribution Payments or Cash Payment, respectively, for any purpose whatsoever.

ix.   In the event the amount of the Estates Distribution Payments is sufficient to make a full payment on the Allowed Bankruptcy WARN and Wage Claims, the total amount distributed to each Class Member on the Allowed Bankruptcy WARN and Wage Claims shall equal the amount listed on Schedule 1 to the Settlement Agreement for those claims. In the event the amount of the Allowed Bankruptcy WARN and Wage Claims is greater than the Estates Distribution Payments, the Class Members' distributions shall be reduced on a *pro rata* basis so all Class Members receive an equal percentage of the Estates Distribution Payments. For the avoidance of doubt, the Class Counsel's Fees, Class Counsel's Expenses and the Class Representative Service Payments are payable solely out of the Qualified Settlement Fund, consistent with the terms of the Settlement Agreement, and such fees, expenses and payments are included in the amount of the Allowed Bankruptcy WARN and Wage Claims as set forth in Schedule 1 to the Settlement Agreement and not in addition to such amount.

x.  Upon the Effective Date, any and all individual claims asserted by Class Members against the Debtors related to the claims set forth in the WARN Action shall be deemed satisfied and expunged, without need for further court order, and payment on account of such claims shall be limited solely to the Estates Distribution Payments and Cash Payment.  Proofs of claim filed by individuals who choose to timely opt-out of the WARN Class shall be unaffected by the release contained in the Settlement.

xi.  Class Counsel shall be responsible for the production and mailing of all notices required to be provided to the Class Members (the "Class Notice"), the cost of which shall be paid solely from the Qualified Settlement Fund.  The Class Notice shall be mailed within five (5) business days following entry of the order certifying the Class for settlement purposes and preliminarily approving the Settlement Agreement.  The address of Class Counsel will be used as the return address for the Class Notice, and Class Counsel will respond to all inquiries of the Class arising from or related to the Settlement.  Class Counsel may retain the services of a settlement administrator (the "Administrator") to perform this service and other services related to the administration of the Qualified Settlement Fund, and the costs of the Administrator acting in this capacity, if applicable, may be deducted from the Qualified Settlement Fund.

xii.  The Class Representatives shall receive an aggregate one-time payment from the first distribution from the Qualified Settlement Fund of $30,000, to be allocated as follows: $5,000 each to David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton for their service in this matter (together, the "Class Representative Service Payments").  Class Counsel shall distribute this payment to the Class Representatives, in addition to each Class Representative's individualized disbursements on account of the Settlement payments contemplated therein.[6]  Class Counsel's Fees will not be deducted from the Class Representative Service Payments.

xiii.  Class Counsel is entitled to attorneys' fees ("Class Counsel's Fees") in the amount of one-third (1/3) of each distribution on the Estates Distribution Payments and Cash Payment, net of the one-time $30,000 aggregate payment for Class Representative Service Payments.  In addition, Class Counsel is entitled to its litigation expenses (including costs associated with the production and mailing of the Class Notice and the administration of the Settlement, estimated to be approximately $75,000) ("Class Counsel's Expenses").  Class Counsel's Fees and Class Counsel's Expenses, as well as the Representative Service Payments, shall be paid exclusively by the Qualified Settlement Fund.  Class Counsel's Fees and Class Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter.

xiv.  Class Counsel shall send the Class Notice by first class mail to each Class Member's last known address and the Class Notice shall state:

a.  That each Class Member has the right to opt out of the Class and preserve all of his or her rights, if any, against the Debtors and Non-Debtor Defendants, including the Released Claims (all such persons timely electing

---

[6] For avoidance of doubt, the Class Representative Service Payments shall have no affect on the priority amounts available to the Class Representatives for their individualized Allowed Bankruptcy WARN and Wage Claims.

to opt out of the Class, the "Opt-Outs");

b.     That the Settlement shall become effective only if it is finally approved by the Bankruptcy Court under Rules 7023 and Rule 9019 of the Federal Rules of Bankruptcy Procedure, and Rule 23 of the Federal Rules of Civil Procedure, as made applicable by Rule 7023 of the Federal Rules of Bankruptcy Procedure;

c.     That, if so approved, the Settlement shall be effective as to all Class Members who did not timely elect to opt out of the Class;

d.     The projected net dollar amounts such Class Member would receive under the Settlement, as shown on Schedule 1, assuming full payments of the Estates Distribution Payments and Cash Payment;

e.     That the Estates Distribution Payments may or may not equal the Allowed Bankruptcy WARN and Wage Claims depending on various factors and circumstances in the Bankruptcy Case;

f.     That each Class Member who does not opt out has the right to object to the Settlement either in person or through counsel and be heard at the Fairness Hearing;

g.     That all Released Claims of a Class Member (other than claims with respect to amounts to be paid under the terms of the Settlement) shall be waived without need for further court order and any individual claim of Class Members against the Debtors related to or based upon the WARN Act or any comparable state and local laws shall be deemed satisfied and expunged from the applicable claims registers maintained by the Bankruptcy Court, without need for further court order and that no person, including the Class Member, shall be entitled to any further distribution thereon.

xv.     The Settlement Agreement shall become effective only if it is approved by a final order entered by the Bankruptcy Court.

## **RELIEF REQUESTED**

19.     By this Joint Motion, the Parties request that the Bankruptcy Court enter orders: (1) approving the Settlement Agreement pursuant to Bankruptcy Rule 9019; (2) preliminarily approving the Settlement Agreement pursuant to Bankruptcy Rule 7023; (3) certifying the WARN Class for settlement purposes only, including the appointment of Lankenau & Miller, LLP, The Gardner Firm, P.C., Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf, DeRossett and Lane Law Offices as Class Counsel and David Engelbrecht, Josiah Williamson, Gregory Mefford,

Shawn Abner, Jacob Helton, and Billy Hatton as Class Representatives; (4) approving the form

and manner of the Class Notice; (5) scheduling the Fairness Hearing; (6) finally approving the

Settlement Agreement following the Fairness Hearing; and (7) granting related relief.

## BASIS FOR RELIEF REQUESTED

**A.    The Bankruptcy Court Should Approve the Settlement Pursuant to Rule 9019 of the Bankruptcy Rules.**

20.    This Court has found that "[i]n determining whether to approve a

settlement, the bankruptcy court must 'assess and balance the value of the claim that is being

compromised against the value to the estate of the acceptance of the compromise proposal.'" *In re*

*Cazon, LLC*, 2016 Bankr. LEXIS 2722 *8 (Bankr. S.D. W. Va. 2016) (citing *Myers v. Martin (In*

*re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)).  Bankruptcy Rule 9019 authorizes a bankruptcy court

to approve a compromise or settlement after notice and a hearing and section 105 of the Bankruptcy

Code empowers a court to issue any order that is "necessary or appropriate."  *See* 11 U.S.C. §

105(a) and Fed. R. Bankr. P. 9019(a).

21.    "[T]he authority to approve a compromise settlement is within the sound discretion

of the bankruptcy court."  *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005);

*see also, In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  When exercising such discretion,

the bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best

interest [sic] of the estate."  *Key3Media,* 336 B.R. 87, 92; *see also, Fry's Metals, Inc. v. Gibbons*

*(In re RFE Industries, Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *In re Louise's, Inc.*, 211 B.R. at

801; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (Bankr. D. Del. 1998).

22.    The bankruptcy court is not required to determine that the proposed settlement is

the best possible compromise.  *In re Key3Media Group*, 336 B.R. at 92-93 (citing *In re Coram*

*Healthcare Corp.,* 315 B.R. 321, 329 (Bankr. D. Del. 2004)).  Rather, the Settlement should be

approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983). In this respect, it is not required for the court to consider the information necessary to resolve the factual dispute, nor is it necessary for the bankruptcy court to "conclusively determine claims subject to a compromise." *Key3Media Group*, 336 B.R. at 92 (quoting *In re Martin*, 212 B.R. 316, 319 (BAP 8th Cir. B.A.P. 1997)).

**B.      Standards for Approval of the Settlement Agreement.**

23.      To determine if a settlement can be approved, courts generally consider the following four factors: 1) the probability of success in litigation; 2) the likely difficulties in collection; 3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and 4) the paramount interests of creditors. *In re Cazon, LLC*, 2016 Bankr. LEXIS 2722 at *8 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968); *In re Martin*, 91 F.3d at 393; *Van Wagner v. Atlas Tri-State SPE, LLC*, No. 3:11-CV-75, 2012 U.S. Dist. LEXIS 190023, 2012 WL 1636857 at 6 (N.D. W. Va. May 8, 2012)).

**C.      Application of the Settlement Approval Factors.**

24.      The results of a trial on the WARN Action are uncertain and the litigation here is complex. The WARN Action involves numerous legal issues regarding the application of the WARN Act and its statutory and other legal defenses to complex facts. These issues include, *inter alia*, (i) whether the Defendants provided adequate notice to the Class Members under the WARN Act; (ii) whether the Defendants can be held liable under the WARN Act in connection with the alleged acts/omissions; (iii) whether the Defendants were entitled to give fewer than sixty (60) days' notice because of statutory exceptions under the WARN Act; (iv) whether the Defendants

13

had any defenses to the Class Members' wage and hour claims; (v) the computation of the amount

of damages; and (vi) whether attorneys' fees are to be awarded to the Class Members if they prevail

and whether such fees are entitled to administrative priority.

25.     Continued litigation would be costly and time-consuming and expose the Parties to

significant litigation risks.  Class Counsel has asserted that the aggregated WARN Act liability of

sixty (60) days' damages and benefits is significant.  As noted therein, the Settlement provides for

an allowed priority claim jointly and severally against the Debtors, pursuant to 11 U.S.C. §

507(a)(4) and (a)(5), equal to sixty percent (60%) of sixty (60) days' pay and benefits for each

Class member, in the aggregate amount of $14,630,825.63,[7] plus an allowed priority wage claim

under 11 U.S.C. § 507(a)(4) in the aggregate amount of $2,711,494.11 for up to eight (8) days of

pay for each Class member in resolution of their wage claims, which amount shall be subject to

the Statutory Cap.  To the extent any Class Members' Allowed Bankruptcy WARN and Wage

Claims exceed the Statutory Cap per employee, the balance shall be treated as a general unsecured

claim. In addition, the Cash Payment from the Non-Debtor Defendants will total $125,000.

Accordingly, the Parties respectfully submit that approval of the Settlement Agreement is

appropriate and warranted.[8]

26.     The Debtors submit that the Settlement Agreement is in the best interest of creditors

and the Estates.  When determining whether a compromise is in the best interests of an estate, the

Bankruptcy Court must "'assess and balance the value of the claim that is being compromised

against the value to the estate of the acceptance of the compromise proposal.'"  *In re Key3Media*

*Group*, 336 B.R. at 93 (quoting *In re Martin*, 91 F.3d at 393 (citing *TMT Trailer Ferry, Inc. v.*

---

[7] Subject to the 60% cap, for employees who had a wage garnishment for domestic support, the garnished sums will
be treated as a priority claim under 11 U.S.C. § 507(a)(1).

[8] In the event that the Settlement Agreement is not approved by the Bankruptcy Court or the Settlement Agreement
does not become binding and enforceable for any reason, the Parties reserve all of their rights.

*Anderson*, 390 U.S. 414, 424 (1968))); *see also*, *In re Nationwide Sports Distributors, Inc.*, 227

B.R. 455, 460 (Bankr. E.D. Pa. 1998) ("[I]n deciding whether to approve a particular compromise,

courts utilize various criteria designed to achieve the objective of having the Defendant or debtor

in possession act in [the] best interests of the estate").   To properly balance these values, the

Bankruptcy Court should consider all factors "relevant to a full and fair assessment of the wisdom

of the proposed compromise."   *In re Marvel*, 222 B.R. at 249 (quoting *TMT Trailer Ferry, Inc.*,

390 U.S. at 424); *see also*,   *Key3Media Group*, 336 B.R. at 92 ("[t]he bankruptcy court must be

"apprised of all relevant information that will enable it to determine what course of action will be

in the best interest of the estate.") (quoting *In re Martin*, 91 F.3d at 393).

27.     The paramount interest of creditors (with a true economic interest in the Bankruptcy

Case) and reasonable deference to their views also favors approval of the Settlement Agreement.

Moreover, as set forth above, the Settlement Agreement spares the Estates the significant expense

and uncertainty associated with the litigation of the myriad of issues in the WARN Action.  It also

caps the Plaintiffs' claim to sixty percent of the total potential claim under the WARN Act.  Finally,

the Settlement provides for the allowance of the Plaintiffs' claim in recognition that, given the

Debtors' current financial situation, the Allowed Bankruptcy WARN and Wage Claims may or

may not be paid based on numerous factors and circumstances in the Bankruptcy Case.

Accordingly, in light of each of the factors discussed above, the Settlement Agreement should be

approved.

**D.      The Bankruptcy Court Should Certify the Class, Appoint Class Counsel, and
         Preliminarily Approve the Settlement Agreement Pursuant to Rule 23 of the
         Federal Rules of Civil Procedure.**

28.     Where, as in these cases, the Bankruptcy Court has not already certified a class,

before approving a class settlement pursuant to Civil Rule 23, the Bankruptcy Court must

determine whether the proposed settlement class satisfies the certification requirements of Civil

Rule 23.  *Amchem v. Windsor*, 521 U.S. 591, 620 (1997); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 300 (3rd Cir. 2005).

29.     "[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes." *Amchem*, 521 U.S. at 618.  *Accord Community Bank*, 418 F.3d at 299.  "The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification."  *Community Bank*, 418 F.3d at 299.  *See also*, *General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Lit*ig., 55 F.3d 768, 786 (3rd Cir. 1995) ("By specifying certification for settlement purposes only . . . the court preserves the defendant's ability to contest certification should the settlement fall apart.").

30.     Subdivisions (a) and (b) of Rule 23 "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class Representatives."  *Amchem*, 521 U.S. at 621.

**E.     The Bankruptcy Court Should Conditionally Certify the Settlement Class.**

31.     To be certified, a class must satisfy the four requirements of Rule 23(a):  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  FED. R. CIV. P. 23; *Community Bank*, 418 F.3d at 302.  In addition, the class must satisfy the requirements of Rule 23(b)(1), (2), or (3).  In these cases, the Parties have agreed to request conditional certification under Rule 23(b)(3), "the customary vehicle for damage actions."  *Id.*  In order to certify a class under Rule 23(b)(3), the court must make two additional findings:  predominance and superiority. That is, "[i]ssues common to the class must predominate over individual issues, and the class action device must be superior to other means of handling the litigation."  *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434, 442-43 (E.D. Pa 2008).

32.     The proposed Settlement Class meets each of the foregoing elements.

16

### (i) The Rule 23(a) Criteria

33.     Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001).  "No single magic number exists satisfying the numerosity requirement." *Beherend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007) (citing *Moskovitz v. Loop*, 128 F.R.D. 624, 628 (E.D. Pa. 1989).

34.     The proposed class of approximately 1,561 Class Members easily meets the numerosity requirement and joinder of all Class Members is impractical.  The Class is sufficiently numerous to make joinder of all members impractical, and thus satisfies the numerosity requirement.  *See Gates*, 248 F.R.D. at 440 (finding that two classes made up of 400 and 1,000, respectively, satisfied the numerosity requirement).  Accordingly, the Bankruptcy Court should find that the numerosity requirement is met.

35.     The commonality requirement requires existence of at least one question of law or fact common to the Class.  FED. R. CIV. P. 23(a)(2); *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  The commonality threshold is low (*Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007)), and does not require "an identity of claims or facts among class members," *Behrend*, 245 F.R.D. at 202.  Further, the existence of individual facts and circumstances will not defeat commonality so long as the Class Members allege harm under the same legal theory.

36.     Here, fundamental issues of law and fact regarding unpaid wages, notice of termination, applicability of several defenses, measure of damages and priority of claims and

attorneys' fees are common to all Class Members.[9]

37. Typicality requires that the "named plaintiffs claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." Fed. R. Civ. P. 23(a)(3); *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (quoting *Baby Neal*, 43 F.3d at 55). "Typicality requires a strong similarity of legal theories to ensure that the class Representatives' pursuit of their own goals will work to benefit the entire class." *Powers*, 245 F.R.D. at 236. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-296 (quoting *Baby Neal*, 43 F.3d at 55).

38. The Class Representatives do not allege that they were singled out for disparate treatment in the manner in which they were terminated. Instead, they allege that they suffered harm as a result of the same conduct that allegedly injured the absentee Class Members – they were allegedly terminated on or about July 1, 2019 without receiving sixty (60) days' notice and without being paid certain wages. Accordingly, the Bankruptcy Court should find that the typicality requirement is met.

39. With respect to adequacy, Class Representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Gates*, 248 F.R.D at 441. The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class Representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296. Thus, the court must determine "whether the

---

[9]  Class Counsel recognizes that the amount of damages is particular to each Class Member.  However, individualized damages calculations do not defeat commonality, "so long as the plaintiffs allege harm under the same legal theory." *Baby Neal v. Casey*, 43 F.3d 48, 56-58 (3d Cir. 1994).

Representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185.

40.     The Court should find that the Class Representatives and Class Counsel adequately represent the interests of the Class Members based on the attached Declaration of Mary E. Olsen (the "Olsen Declaration").  As demonstrated by the Olsen Declaration, Class Counsel are well qualified and experienced to represent the Class Members.  Collectively, they have been appointed as class counsel in more than one hundred WARN actions, many of which were in bankruptcy cases.

41.     Incentive or service payment awards to Class Representatives are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded").

42.     In these cases, the Class Representatives performed important services for the benefit of the Class by commencing the litigation and willingly assisting counsel throughout the litigation.

43.     The amount of the service award agreed to in these cases is also consistent and on scale with amounts awarded in WARN class actions in bankruptcy courts across the country.  *See*, *D'Amico, et al. v. Tweeter, OPCO, LLC and Schultze Asset Management, LLC*, Adv. Pro. No. 08-51800 (Del. Bankr. 2008)(one class representative who was deposed received $15,000, the other two received $10,000 each. Service payments were approximately 3% of common fund); *Kettell*

*v. Bill Heard Enterprises, Inc.*, Adv. Pro. No. 08-80153 (N.D. Ala. Bankr. 2008) (court approved service payments for two class representatives in the amount of $10,000 each. Service payments were approximately 1% of common fund); *Kohlstadt, et al, v. Solyndra*, Adv. Pro. No. 11-53155 (Del. Bankr. 2011)(class representatives received $7500 and $12,500, respectively, as service payments, which were approximately 0.6% of common fund); *Capizzi, et al., v. AWTR Liquidation Inc., f/k/a Rhythm and Hues, Inc.,* Adv. Pro. No. 2:13-ap-01209-NB  (C.D. Cal. Bankr. 2013)(class representatives received $10,000 each as service payments, which were approximately 2% of the common fund).

44.     Accordingly, the $30,000 aggregate service payment is appropriate and justified as part of the overall Settlement in light of the value of the Class Representatives' services to the Class and risks taken on behalf of the Class.[10]   Moreover, the Defendants have agreed to the proposed award of the service payments to the Class Representatives.

### (ii) The Rule 23(b)(3) Criteria

45.     Common questions of law and fact predominate over any individual issues. Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  *Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09.  The proper predominance inquiry "trains on the legal or factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623.  "In this vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named Representatives must be typical of the claims or defenses of the classes." *Community Bank*, 418 F.3d at 309.

46.     Just as typicality exists, predominance also exists in these cases.  All of the claims

---

[10]  In addition to the service payment, the Class Representatives shall be authorized to participate in the Settlement as Class Members.

arise from an alleged violation of the WARN Act and an alleged failure to pay wages relating to the terminations that occurred on or about July 1, 2019 and thereafter. Accordingly, the Bankruptcy Court should find that the predominance requirement is met.

47.     Rule 23(b)(3) also requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Krell v. Prudential Inc. Co. (In re Prudential Inc. Co.)*, 148 F.3d at 283, 316 (3d Cir. 1998).

48.     Rule 23 sets forth several factors relevant to the superiority inquiry: "(A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. However, when class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered. *Gates*, 248 F.R.D. at 443.

49.     Here, a class action is superior to individual actions. First, the amount of each Class Member's claim is relatively small. Individually, there is little incentive in controlling the prosecution of separate actions. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth

someone's (usually an attorney's) labor.")  (quotation and citation omitted).  It is appropriate that all the claims against the Defendants arising from the Class Representatives' allegations should be concentrated in this Bankruptcy Court.  In addition, determining the claims of some Class Members, but not all, could prejudice the claims of the remaining Class Members.  Accordingly, the Bankruptcy Court should find that the superiority element is met.

50.    Based on the foregoing, the Bankruptcy Court should certify the Class for settlement purposes only, appoint Plaintiffs David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton as the Class Representatives, and appoint Lankenau & Miller, LLP, The Gardner Firm, P.C., Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf, DeRossett and Lane Law Offices as Class Counsel.

**F.    The Bankruptcy Court Should Preliminarily Approve the Settlement.**

51.    After class certification, approval of a class settlement generally requires two hearings:  one preliminary approval hearing and one final "fairness" hearing.  *Gates*, 248 F.R.D. 434.  "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'"  *Gates v. Rohm & Haas Co,* 248 F.R.D. 434, 438 (E.D. Pa. 2008) quoting *Smith v. Professional Billing & Mgmt. Sys., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *see also*, *In re Community Bank of Northern Virginia*, 2008 WL 3833271 (W.D. Pa. Aug. 15, 2008). The preliminary approval determination requires the Bankruptcy Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re General Motors Corp.*, 55 F.3d 768, 785-86 (3d Cir. 1995). When class certification is sought in conjunction with preliminary approval, then class member objections are

not relevant.  *Gates*, 248 F. R. D. at 444.

52.     The Settlement Agreement has no obvious deficiencies and falls well within the range of reason.  Each of the above-cited factors favors preliminary approval of the Settlement Agreement.  First, the Settlement is the result of good faith, arm's length negotiations between capable adversaries, both in mediation and thereafter.  Second, Class Counsel conducted informal discovery, analyzed the applicable law and weighed the likelihood of success during the course of the litigation and settlement negotiations.  Third, counsel for all Parties, and Class Counsel in particular, has the experience and the skill to both vigorously litigate WARN Act and wage claims and to determine when and to what extent settlement is appropriate.  Class Counsel has been collectively appointed as class counsel in over one hundred WARN cases.

53.     In light of the foregoing, the Bankruptcy Court should preliminarily approve the Settlement Agreement.

## G.     The Bankruptcy Court Should Approve the Form and Manner of the Proposed Notice of the Settlement.

54.     Once a settlement is preliminarily approved, notice of the proposed settlement and of the fairness hearing is provided to class members.  Federal Rule of Civil Procedure 23(e) requires that all members of the class be notified of the terms of any proposed settlement.  Civil Rule 23(e) requirements is "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers and pleadings filed in the litigation." *In re Prudential*, 148 F.3d at 326-27.

55.     If the Settlement Agreement in these cases is preliminarily approved pursuant to this Joint Motion, notice of the Class certification and the proposed Settlement can be combined in one notice.  *Gates*, 248 F.R.D. at 445; *Collier v. Montgomery County Housing Authority*, 192 F.R.D. 176, 186 (E.D. Pa. 2000) (citing MANUAL FOR COMPLEX LITIGATION § 30.212, at 226).  At

23

the subsequent fairness hearing, Class Members may formally object to the proposed Settlement. *Gates*, 248 F.R.D. at 439.

56.     The Parties submit that the proposed Class Notice to Settlement attached to the Settlement Agreement as Exhibit D meets the requirements of Rule 23(c)(2)(B).  That rule, in pertinent part, provides as follows: "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3)."

57.     The proposed Class Notice will be served by Class Counsel, or their designee, upon each Class Member.  Class Counsel proposes that within five (5) business days following entry of the order certifying the Class for settlement purposes and preliminarily approving the Settlement Agreement, Class Counsel will serve the Class Notice substantially in the form attached to the Settlement Agreement as Exhibit D, upon each Class Member at the last known addresses of each Class Member according to the Debtors' relevant books and records.  *Cf. Prudential*, 148 F.3d at 327 (holding that mailings to last known addresses of class members and publication in national newspapers sufficient to provide notice to large, multi-state class).

58.     The Class Notice includes each of the facts required by Rule 23(c)(2)(B).  The Class Notice also outlines the terms of the Settlement Agreement, including the attorneys' fees and costs proposed to be paid to Class Counsel, describes how each Class Member may obtain a copy of the Settlement Agreement and provides each Class Member with a personalized projection of the net dollar amount they would receive under the Settlement, assuming full funding of the Allowed

Bankruptcy WARN and Wage Claims.  The Class Notice also states the date, time, location and

purpose of the Fairness Hearing, informs the Class Members of their right to appear at the Fairness

Hearing, and describes the procedure for opting-out or objecting to the Settlement Agreement.

Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

## H.    The Bankruptcy Court Should Finally Approve the Settlement at the Fairness Hearing.

59.    The Parties request the Bankruptcy Court to hold a Fairness Hearing within (60)

sixty days of entry of the preliminary approval order.  At the Fairness Hearing, the Bankruptcy

Court should finally approve the Settlement Agreement.

60.    Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may

be settled, voluntarily dismissed or compromised only with the court's approval."  *Id.*  Final

approval of a settlement pursuant to Rule 23(e) turns on whether the settlement is "fair, reasonable

and adequate."  FED. R. CIV. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir.

2001).  "This inquiry requires the court's independent and objective analysis of the evidence and

circumstances before it in order to determine whether the settlement is in the best interest of those

whose claims will be extinguished."  *Community Bank*, 2008 WL 3833271 at * 5 (quoting *General

Motors*, 55 F.3d at 785.).

61.    "The court must approve any settlement . . . of the claims . . . of a certified

class." Fed. R. Civ. P. 23(e)(1)(A). The court may do so only after a hearing and on finding that

the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ.P. 23(e)(1)(C). Such

approval is required to make sure that any settlement reached is consistent with the plaintiffs'

fiduciary obligations to the class. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).

Courts considering whether to approve a proposed class action settlement may consider the

following factors: (1) the extent of discovery that has taken place and the stage of the proceedings;
(2) bad faith or collusion and circumstances surrounding the negotiation; (3) the experience of
counsel; (4) objections from class members; (5) the relative strength of the plaintiffs' case on the
merits; (6) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to
encounter if the case goes to trial; (7) the anticipated duration and expense of additional litigation;
(8) the solvency of the defendants and the likelihood of recovery on a litigated judgment. *Henley
v. FMC Corp.*, 207 F. Supp. 2d 489, 492-93 (S.D. W. Va. 2002) (citing *In re Jiffy Lube*, 927 F.2d
at 158; *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975)); *In re Montgomery County Real Estate
Antitrust Litigation*, 83 F.R.D. 305 (D. Md. 1979)).

62.     The following factors strongly support approval of the Settlement Agreement.

a.     The Settlement Agreement was reached after Class Counsel
conducted informal discovery, and the Parties analyzed the
applicable law and weighed their respective likelihood of success.
Further, the Parties shared their respective views of the WARN
Action during a mediation before Magistrate Judge Omar
Aboulhosn, as well as during informal settlement discussions.

b.     Continued litigation of the WARN Action will be complicated,
protracted and expensive and would further deplete the Estates'
resources.

c.     The Class Representatives support the Settlement Agreement and
Class Counsel believes that the bulk of the other Class Members will
have a favorable reaction to the Settlement Agreement and will
neither object to it nor opt out of it.

d.     The risk that the Class Representatives would be unable to collect
on any judgment, even if successful, was present because of the
limited resources in the Debtors' estates.

e.     When considered in light of the best possible recovery and the
attendant risks, the Settlement falls well within the range of

reasonableness.  The Settlement provides for (i) an allowed priority claim pursuant to 11 U.S.C. § 507(a)(4) and (a)(5), equal to 60% of sixty days' pay and benefits for each Class member, in the aggregate amount of  $14,630,825.63,[11] (ii) an allowed priority wage claim under 11 U.S.C. § 507(a)(4) in the aggregate amount of $2,711,494.11 for up to eight (8) days of pay for each Class Member in resolution of their wage claims, which amount shall be subject to the Statutory Cap, and (iii) a cash payment from the Non-Debtor Defendants totaling $125,000.  To the extent any Class Members' Allowed Bankruptcy WARN and Wage Claims exceed the Statutory Cap, per employee, the balance shall be treated as a general unsecured claim.

63.     Based on the foregoing, the Bankruptcy Court should finally approve the Settlement Agreement.

### Conclusion

WHEREFORE, the Parties respectfully request the Bankruptcy Court to enter Orders: (i) granting the Joint Motion in its entirety; (ii) certifying the Class for settlement purposes only; (iii) appointing Class Counsel and the Class Representatives, and preliminarily approving the Settlement Agreement; (iv) approving the form and manner of the Class Notice; (v) scheduling a Fairness Hearing; (vi) approving the Settlement Agreement on a final basis; and (vii) granting such other relief as the Bankruptcy Court deems necessary and appropriate.

DATED: September 1, 2020

**SUPPLE LAW OFFICE, PLLC**

Joe M. Supple, Bar. No. 8013
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
Facsimile: 304.675.4372
joe.supple@supplelawoffice.com

**SQUIRE PATTON BOGGS (US) LLP**
*/s/ Stephen D. Lerner*

---

[11] Subject to the 60% cap above, for employees who had a wage garnishment for domestic support, the garnished sums will be treated as a priority claim under 11 U.S.C. § 507(a)(1).

Stephen D. Lerner (admitted *pro hac vice*)
Nava Hazan (admitted *pro hac vice*)
Travis McRoberts (admitted *pro hac vice*)
201 E. Fourth St., Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
nava.hazan@squirepb.com
travis.mcroberts@squirepb.com

*Co-Counsel to the Debtors and Debtors-in-Possession*

AND

*/s/ Mary Olsen*
Mary Olsen
The Gardner Firm, P.C.
182 St. Francis Street, Suite 103
Mobile, Alabama 36602
Telephone: (251) 433-8100
Facsimile: (251) 433-8181

Stuart J. Miller, Esq.
Lankenau & Miller LLP
132 Nassau Street, Suite 1100
New York, New York 10038
Telephone: (212) 581-5005
Facsimile:  (212) 581-2122

Samuel B. Petsonk (WVSB # 12-418)
Petsonk PLLC
101 Ramey Court
PO Box 1045
Beckley, WV 25802
(304 )900-3171 (phone)
(304) 986-4633 (fax)
sam@petsonk.com

Bren J. Pomponio (WVSB #7774)
Clint Carte (WVSB #12054)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV 25301
(304) 344-3144

28

(304) 344-3145 (fax)
bren@msjlaw.org
clint@msjlaw.org

Ned Pillersdorf
Pillersdorf Law Office
124 West Court St
Prestonsburg, KY 41653
Phone: 606-886-6090
Fax: 606-886-6148

*Counsel for Plaintiffs and the Settlement
Class*

AND

**LEXINGTON COAL COMPANY, LLC**
*/s/ Helena R. Jackson*
Helena R. Jackson, Esq.
164 Main Street, Suite 401
Pikeville, Kentucky 41501
hj@lexingtoncoal.us
859.533.4901

**DINSMORE & SHOHL LLP**
Janet Smith Holbrook (WVSBN 5853)
John (J.H.) Harlan Mahaney (WVSBN 6993)
Alexis B. Mattingly (WVSBN 10286)
611 Third Avenue
Huntington, West Virginia 25701
(304) 529-6181 Phone
(304) 522-4312 Fax
Janet.holbrook@dinsmore.com
John.mahaney@dinsmore.com
alexis.mattingly@dinsmore.com

Case 3:19-ap-03002   Doc 61-1   Filed 09/01/21   Entered 09/01/20 17:46:04   Desc
Exhibit 1   Page 34 of 104

## **Exhibit A**

### **Settlement Agreement**

SETTLEMENT, RELEASE, AND ALLOWANCE OF CLAIM AGREEMENT


between and among


DAVID ENGELBRECHT, JOSIAH WILLIAMSON, GREGORY MEFFORD, SHAWN
ABNER, JACOB HELTON, AND BILLY HATTON, ON BEHALF OF THEMSELVES AND
AS CLASS REPRESENTATIVES ON BEHALF OF THE OTHER CLASS MEMBERS,


and


BLACKJEWEL, LLC; REVELATION ENERGY, LLC; LEXINGTON COAL CO. LLC; JEFF
HOOPS, SR. AND JEFFERY A. HOOPS, II,


Dated as of September 1, 2020

## SETTLEMENT, RELEASE, AND ALLOWANCE OF CLAIM AGREEMENT

This Settlement, Release and Allowance of Claim Agreement, dated as of September 1, 2020 (the "Settlement Agreement" or "Settlement"), is entered into, by and among: (a) Blackjewel, L.L.C. and Revelation Energy, LLC (together, the "Debtors" or "Debtor-Defendants"), in the jointly administered Case No. 19-bk-30289 (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Southern District of West Virginia (the "Bankruptcy Court") and (b) Lexington Coal Co., LLC, Jeff Hoops, Sr. and Jeffery A. Hoops, II (together, the "Non-Debtor Defendants," and collectively with the Debtor-Defendants, the "Defendants") on the one hand, and (c) David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton (collectively, the "Plaintiffs" or "Class Representatives"), on behalf of themselves and similarly situated class members specifically identified in Section 2 below (together with the Class Representatives, but excluding the Opt-Outs, as defined below, the "Class Members" or the "Class"), on the other hand.  The Defendants and Plaintiffs are collectively referred to herein as the "Parties," or, as to each, a "Party."

## RECITALS

WHEREAS, on July 1, 2019 and July 24, 2019 (the "Petition Date"), the Debtors and certain affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the Bankruptcy Court initiating the Bankruptcy Case;

WHEREAS, prior to the Petition Date, the Debtors employed approximately 1,700 employees, both hourly and salaried, including the Class Members, in their business operations;

WHEREAS, the Plaintiffs contend that, on or about July 1, 2019, and thereafter, the Debtors terminated the employment of Plaintiffs and most of the workforce who worked at the

Debtors' facilities in the Central Appalachian Coal Basin in West Virginia, Virginia and Kentucky (the "Eastern Division," encompassing approximately 1,100 employees), and in the Powder River Basin in Wyoming (the "Western Division," encompassing approximately 600 employees);

WHEREAS, on July 9, 2019, the Plaintiffs filed their Class Action Adversary Proceeding Complaints[1] (as amended, the "WARN Action"), against the Debtors and Non-Debtor Defendants, in which the Plaintiffs asserted a class action claim under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 et seq. (the "WARN Act") alleging that the Debtors and the Non-Debtor Defendants, as a single employer, violated the WARN Act by implementing alleged plant closings or mass layoffs, without providing a sixty (60) days advance written notice thereof;

WHEREAS, the Class Representatives further asserted that, as a consequence of this alleged failure, the Class Members have a claim against the Defendants and the Non-Debtor Defendants for damages for the alleged sixty (60) day violation period;

WHEREAS, the WARN Action also includes wage and hour and other employment and employee benefits-related claims for the putative class members;

WHEREAS, the Defendants deny the allegations described above;

WHEREAS, on September 20, 2019, the Bankruptcy Court entered an order for the Parties to commence mediation with Magistrate Judge Omar Aboulhosn [D.I. 17, Case No. 19-ap-03002];

WHEREAS, on October 25, 2019, the Debtors provided the Plaintiffs with relevant wage information concerning the hourly and salaried employees whose employment Plaintiffs contend was terminated by the Debtors;

---

[1] The adversary proceedings, which have been consolidated for the purposes of this Settlement, are: *David Engelbrecht, Josiah Williamson and Gregory Mefford, on their own behalf and on behalf of all other persons similarly situated v. Blackjewel, LLC*; Adversary Proceeding No. 19-ap-3002 and *Shawn Abner, Jacob Helton and Billy Hatton individually and on behalf of others similarly situated v. Blackjewel, LLC, Revelation Energy, LLC, Lexington Coal Co., LLC, Jeff Hoops, Sr., Jeffery A. Hoops, II*, Adversary Proceeding No. 19-ap-03003.

WHEREAS, on November 4, 2019, the Parties mediated this matter before Magistrate Judge Omar Aboulhosn and although the WARN Action was not resolved during the mediation, the Parties have been working since that date toward a resolution of the WARN Action; and

WHEREAS, following extended settlement negotiations, conducted in good faith and at arms' length, on or about March 3, 2020, the Parties reached agreement on a compromise that will resolve the WARN Action, according to the terms set forth herein.

NOW, THEREFORE, as material consideration and inducements to the execution of this Settlement Agreement, and in consideration of the mutual promises and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intended to be binding, the Parties hereby agree, subject to Bankruptcy Court approval, as described below:

1.     **Settlement Filings.**  The Parties shall promptly file a joint motion in the WARN Action under Rules 9019 and 7023 of the Federal Rules of Bankruptcy Procedure, and Rule 23 of the Federal Rules of Civil Procedure as made applicable by Rule 7023, for approval of the Settlement through a bifurcated hearing process (the "Settlement Motion").  The Settlement Motion shall request an initial hearing (the "Initial Hearing") to be set within thirty (30) days of the filing of the Settlement Motion, at which time the Parties shall seek entry of an order from the Bankruptcy Court substantially in the form attached hereto as Exhibit A certifying a class of WARN Act claimants for settlement purposes only, preliminarily approving the Settlement, and approving the form and manner of notice to the Class Members of class certification and the Settlement, including, among other things, their right to opt out of the Class, object to the Settlement in person, or appear by counsel (the "Preliminary Settlement Order").  The Parties shall also request that the Bankruptcy Court schedule a date for a fairness hearing (the "Fairness

Hearing") to be set within sixty (60) days of entry of the preliminary approval order.  At the

Fairness Hearing, the Bankruptcy Court will consider final approval of the Settlement, including

the award of Class Counsel's Fees (as defined below), pursuant to an order substantially in the

form attached hereto as Exhibit B (the "Final Settlement Order").  This Settlement Agreement is

subject to, and conditioned upon, entry of the Final Settlement Order by the Bankruptcy Court

approving this Settlement under Rule 23 of the Federal Rules of Civil Procedure, made applicable

herein pursuant to Fed. R. Bankr. P. 7023, and Rule 9019 of the Federal Rules of Bankruptcy

Procedure, after notice and hearing to creditors and parties in interest, in accordance with

applicable law and local rules.

        2.      **Class Certification**.  Upon execution of this Settlement Agreement:

        (a)      The Parties consent, for settlement purposes only, pursuant to Rule 23(b)(3)

of the Federal Rules of Civil Procedure as made applicable to these proceedings by Rule 7023 of

the Federal Rules of Bankruptcy Procedure, that the Class shall be certified in connection with the

WARN Action and the Settlement Motion and is comprised of all persons who were employed by

the Debtors at facilities located in the Eastern Division and the Western Division and who ceased

working for the Debtors on or after July 1, 2019 solely, and who do not file a timely request to opt

out of the Class.  For the avoidance of doubt, the Class excludes the Debtors' employees who were

brought back to work by the Debtors between the dates of July 1, 2019 and November 4, 2019, a

list of which is provided herein at Exhibit C;

        (b)      The Debtors represent that, to the best of their knowledge, information and

belief and based solely upon the Debtors' books and records, all persons (along with their last

known addresses and wage information) who satisfy the criteria set forth in Section 2(a) above are

listed on Schedule 1 hereto.

(c)     Lankenau & Miller, LLP, The Gardner Firm, P.C., Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf Law Office shall be appointed class counsel (together, the "Class Counsel") for the Class created under this Settlement Agreement.

(d)     David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton shall be appointed Class Representatives for the Class created under this Settlement Agreement.

3.      **Effective Date.**  This Settlement Agreement shall become effective upon the date on which the Final Settlement Order becomes a "Final Order" (the "Effective Date").  The Final Settlement Order shall become a Final Order when the time for taking an appeal has expired or, in the event an appeal has been taken, the day the Final Settlement Order has been affirmed with no further right of appeal.  In the event the Effective Date does not occur: (i) this Settlement Agreement and the recitals contained herein shall be void and without force or effect, and neither this Settlement Agreement, nor any of the statements contained herein, shall be admissible in any proceeding involving the Parties; (ii) neither the motion to obtain an order approving this Settlement Agreement nor any of the pleadings filed in support of such motion shall be admissible in any proceeding involving the Parties; and (iii) none of the provisions hereof shall prejudice or impair any rights, remedies or defenses of any of the Parties.

4.      **Allowance of WARN Claims and Wage Claims Against Debtors and Cash Payment to be Made by Non-Debtor Defendants**.

Pursuant to the terms of this Settlement Agreement, and upon the Effective Date, the Class, in full and final settlement of the WARN Action, shall be granted:

a)      an allowed priority claim jointly and severally against the Debtors, in the amount set forth on Schedule 1 hereto, pursuant to 11 U.S.C. § 507(a)(4) and (a)(5) of the Bankruptcy Code, equal to sixty percent (60%) of sixty (60) days' of wages and

benefits for each Class Member, in the aggregate amount of $14,630,825.63,[2] and an allowed priority wage claim under 11 U.S.C. § 507(a)(4) of the Bankruptcy Code in the aggregate amount of $2,711,494.11 for up to eight (8) days of pay for each Class member in resolution of their wage claims (together, the "Allowed Bankruptcy WARN and Wage Claims"), which amount shall be subject to the statutory cap in the amount of $13,650.00 per employee pursuant to 11 U.S.C. § 507(a)(4) of the Bankruptcy Code (the "Statutory Cap").  To the extent any Class Member's Allowed Bankruptcy WARN and Wage Claims exceed the Statutory Cap, such claims will be deemed  and treated as general unsecured claims; and

b)  a cash payment (the "Cash Payment") from the Non-Debtor Defendants totaling $125,000 ($75,000 to be paid by Jeff Hoops, Sr. and Jeffery A. Hoops, II, jointly and severally, with the remaining $50,000 to be paid by Lexington Coal Co., LLC).

5.     **Distributions from the Debtors and Non-Debtor Defendants**.

a)  The distributions from the Debtors' estates (the "Estates") on account of the Allowed Bankruptcy WARN and Wage Claims (the "Estates Distribution Payments") will be made by the Debtors in accordance with the priority scheme established by the Bankruptcy Code to a qualified settlement fund to be established by Class Counsel in conformity with Internal Revenue Code § 468B (the "Qualified Settlement Fund") pursuant to written instructions to be provided by Class Counsel. For the avoidance of doubt, the Class acknowledges that the Allowed Bankruptcy WARN and Wage Claims is an allowed claim to be paid in accordance with the priority scheme established by

---

[2] Subject to the Statutory Cap, as defined below, for employees who had a wage garnishment for domestic support, the garnished sums will be treated as a priority claim under 11 U.S.C. § 507(a)(1) of the Bankruptcy Code.

the Bankruptcy Code and that such claim may or may not be paid depending on the
distributions available to creditors of the Debtors' Estates and may not be paid or
funded in full.

b) The Cash Payment shall be made via wire transfer by the Non-Debtor Defendants
within five (5) business days of the Effective Date to the Qualified Settlement Fund
pursuant to written instructions to be provided by Class Counsel. The name of the
Qualified Settlement Fund shall be *Engelbrecht v. Blackjewel QSF*, and Class Counsel
or the Administrator (as defined below) of the Qualified Settlement Fund shall provide
the Debtors and the Non-Debtor Defendants with a W-9 form for the Qualified
Settlement Fund to enable the Estates Distribution Payments and the Cash Payment,
respectively to the Qualified Settlement Fund.

c) Class Counsel shall act as the trustee of the Qualified Settlement Fund. Class Counsel
shall cause each Class Member's distribution to be paid from the Qualified Settlement
Fund, and shall transmit distributions via first class U.S. Mail to the Class Members at
their last known address as indicated on Schedule 1 hereto (or to such other address as
the Class Members may indicate to Class Counsel or which Class Counsel may locate),
in accordance with applicable law. By accepting his or her portion of the Qualified
Settlement Fund, each Class Member agrees that he or she will be solely responsible
for any and all tax liabilities stemming from the payment of his or her claim under the
Settlement Agreement.

d) The Debtors and Plaintiffs agree that the Estates Distribution Payments shall be the
only payments to be made by the Debtors under this Settlement Agreement. The Non-
Debtors Defendants and the Plaintiffs agree that the Cash Payment shall be the only

payment to be made by the Non-Debtor Defendants under this Settlement Agreement, and that such Cash Payment is being provided as a settlement of this litigation and with no admission of any liability.  Under no circumstances shall the Estates, the Debtors or the Non-Debtor Defendants be required under this Settlement Agreement to pay any sums or other consideration in addition to the Estates Distribution Payments or the Cash Payment, respectively, as described herein, for any purpose whatsoever.

e) Upon, or before, the entry of an Order granting preliminary approval of this Settlement, the Debtors agree to provide Class Counsel with the social security numbers for each Class Member to the best of the Debtors' knowledge based upon the records within the Debtors' possession. Class Counsel agrees to keep the Class Members' social security information confidential and to use it for the sole purpose of locating the Class Members and/or in the preparation of IRS 1099 Forms to reflect the distributions on the Allowed Bankruptcy WARN and Wage Claims.

f) The Debtors agree to provide Class Counsel with an update every six (6) months as to (i) the amount of funds in the Debtors' Estates as of such date, (ii) the amount of outstanding claims asserted by creditors holding secured and administrative claims, and (iii) any potential recovery the Estates may obtain as of such date.  Neither the Estates Distribution Payments nor any other consideration or amount paid, credited, offered, or expended by or on behalf of the Debtors or the Estates, if any, in the performance of this Settlement Agreement constitutes a penalty, fine, punitive damages, or other form of penalty for any alleged claim or offense.  In the event the amount of the Estates Distribution Payment is sufficient to make a full payment on the Allowed Bankruptcy WARN and Wage Claims, the total amount distributed to each Class Member on the

Allowed Bankruptcy WARN and Wage Claims shall equal the amount listed on
<u>Schedule 1</u> for those claims. In the event the amount of the Allowed Bankruptcy
WARN and Wage Claims is greater than the Estates Distribution Payments, the Class
Members' distributions shall be reduced on a *pro rata* basis so all Class Members
receive an equal percentage of the Estates Distribution Payments. For the avoidance of
doubt, the Class Counsel's Fees, Class Counsel's Expenses and the Class
Representative Service Payments shall be payable solely out of the Qualified
Settlement Fund, consistent with the terms of this Settlement Agreement, and such fees,
expenses and payments are included in the amount of the Allowed Bankruptcy WARN
and Wage Claims as set forth in <u>Schedule 1</u> and not in addition to such amount.

g)   The Plaintiffs acknowledge that the payment of the Allowed Bankruptcy WARN and
Wage Claims may not be made as of the effective date of a proposed plan, if any, but
will be paid if and when money comes to the Estates in accordance with the priority
scheme established by the Bankruptcy Code. The Plaintiffs also agree that they will
support any plan proposed by the Debtors which adheres to, and does not violate, the
priority rules of the Bankruptcy Code.

6.   **<u>Satisfaction and Expungement of Individual Claims</u>**.   The Final Settlement
Order shall provide that, on the Effective Date, any and all individual claims asserted by Class
Members against the Debtors related to the claims set forth in the WARN Action shall be deemed
satisfied and expunged from the Debtors claims register, and payment on account of such claims
shall be limited solely to the Estates Distribution Payments and Cash Payment provided for herein.
Proofs of claim filed by individuals who choose to timely opt-out of the WARN Class shall be
unaffected by the release contained in the Settlement.

7.      **Responsibilities of Class Counsel.**  Class Counsel shall be responsible for the production and mailing of all notices required to be provided to the Class Members (the "Class Notice"), the cost of which shall be paid solely from the Qualified Settlement Fund.  The Class Notice shall be mailed within five (5) business days following entry of the order certifying the Class for settlement purposes and preliminarily approving the Settlement Agreement.  The address of Class Counsel will be used as the return address for the Class Notice, and Class Counsel will respond to all inquiries of the Class arising from or related to this Settlement.  Class Counsel may retain the services of a settlement administrator (the "Administrator") to perform this service and other services related to the administration of the Qualified Settlement Fund, and the costs of the Administrator acting in this capacity, if applicable, may be deducted from the Qualified Settlement Fund.

8.      **Allocation of the Cash Payment and Estates Distribution Payments and Disbursement of the Same to Class Members.**

(a)      Allocation of the Cash Payment.  The Cash Payment shall be allocated towards the Class Representative Service Payments (as defined below), Class Counsel's Fees, and Class Counsel's Expenses, as set forth on Schedule 1, and in accordance with this Settlement.

(b)      Allocation of the Estates Distribution Payments.  The Estates Distribution Payments shall be allocated to each Class Member as set forth on Schedule 1, and in accordance with this Settlement on a *pro rata* basis so all Class Members receive an equal percentage of the Estates Distribution Payments.

(c)      Disbursement of the Cash Payment and Estates Distribution Payments.  Class Counsel, or its designee, the Administrator, as fiduciary on behalf of the Qualified Settlement Fund, shall be responsible for making distributions from the Qualified Settlement Fund of any amounts required by this Settlement Agreement, including the preparation and mailing of the

individual settlement checks to Class Members.  For the sake of efficiency, Class Counsel, or its designee, the Administrator, as fiduciary on behalf of the Qualified Settlement Fund, may, in their discretion, delay the distribution on the Cash Payment so that it can be handled in conjunction with the distribution of the Estates Distribution Payments. Class Counsel will also provide each Class Member with a notice advising each Class Member to seek his or her own personal tax advice regarding the potential tax consequences of the disbursements under the Settlement and an explanation of the deduction of Class Counsel's Fees and Costs.  This notice will be included with each Settlement disbursement to the Class Members.

(d)    Residual Funds.  Any Class Member distributions which are not deposited, endorsed or negotiated within one hundred eighty (180) days of the distribution shall be deemed residual funds (the "Residual Funds") on the 181st day following the Final Distribution and treated as follows:

(i)    first, used to make distributions to additional Class Members, if any, that may be identified after Class Counsel has made the final distribution from the Qualified Settlement Fund on the Cash Payment and the Estates Distribution Payments and who fall within the Class definition herein but who did not appear on Schedule 1 ("Additional Class Members"),

(ii)    second, distributed to Class Members on a *pro rata* basis in a supplemental distribution (the "Supplemental Distribution") so long as Class Counsel determines, in their sole discretion, that such distribution is feasible, and

12

(iii)   if any Residual Funds remain after disbursements to Additional Class Members or a Supplemental Distribution, then last, distributed to UMWA Career Centers Inc., which is a 501(c)(3) non-profit organization established in 1996, which goal is to provide job training and job placement services to the rural mining communities of Appalachia.  No portion of the Residual Funds shall revert to or be retained by the Debtors, the Non-Debtor Defendants or Class Counsel for any reason.

(e)   <u>Service Payments to Class Representatives</u>.  The Class Representatives shall receive an aggregate one-time payment from the first distribution from the Qualified Settlement Fund in the amount of $30,000, to be allocated as follows:  $5,000 each to David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton for their service in this matter (together, the "<u>Class Representative Service Payments</u>").  Class Counsel shall distribute this payment to the Class Representatives, in addition to each Class Representative's individualized disbursements on account of the Settlement payments contemplated herein.[3]  The Class Representative Service Payments shall be net payment amounts and shall not be reduced for Class Counsel Fees (as defined below) or for other reasons.  Class Counsel shall issue an IRS Form 1099 to each Class Representative for the amount of the Class Representative Service Payments paid to the Class Representative with his or her taxpayer identification number.  The Class Representative Service Payments shall be paid exclusively by the Qualified Settlement Fund.

---

[3] For the avoidance of doubt, the Class Representative Service Payments shall have no effect on the priority amounts available to the Class Representatives for their individualized Allowed Bankruptcy WARN and Wage Claims.

9. **Class Counsel's Fees and Class Counsel's Expenses.**  Class Counsel is entitled to attorneys' fees ("Class Counsel's Fees") in the amount of one-third (1/3) of each distribution on the Allowed Bankruptcy WARN and Wage Claims and Cash Payment, net of the one-time $30,000 aggregate payment for Class Representative Service Payments.  In addition, Class Counsel is entitled to its litigation expenses (including costs associated with the production and mailing of the Class Notice and the administration of this Settlement, estimated to be approximately $75,000) ("Class Counsel's Expenses").  Class Counsel's Fees and Class Counsel's Expenses, as well as the Representative Service Payments, shall be paid exclusively by the Qualified Settlement Fund. Class Counsel's Fees and Class Counsel's Expenses shall constitute payment in full for the Class Counsel's work and expenses in connection with this matter.

10. **The Class Notice.**  Class Counsel or the Administrator shall bear the responsibility of the preparation of the Class Notices.  The Class Notice, which shall include an opt-out notice form ("Opt-Out Notice Form"), shall be in substantially the form annexed hereto as Exhibit D or such substantially similar form as may be approved by the Bankruptcy Court.  In the event that a Class Notice is returned as undeliverable, Class Counsel shall mail the Class Notice to the corrected address of the intended Class Member recipient as may be determined by Class Counsel through a search of a national database or as may otherwise be obtained by the Parties.

(a)   Contents of the Class Notice.  The Class Notice shall contain the following information, which shall be individualized for each Class Member:

(i)   That each Class Member has the right to opt out of the Class and preserve all of his or her rights, if any, against the Debtors and Non-Debtor Defendants, including the Released Claims, as defined

14

below (all such persons timely electing to opt out of the Class, the

"Opt-Outs");

(ii)      That the Settlement shall become effective only if it is finally

approved by the Bankruptcy Court under Rule 7023 and Rule 9019

of the Federal Rules of Bankruptcy Procedure, and Rule 23 of the

Federal Rules of Civil Procedure, as made applicable by Rule 7023

of the Federal Rules of Bankruptcy Procedure;

(iii)     That, if so approved, the Settlement shall be effective as to all

Class Members who did not timely elect to opt out of the Class;

(iv)     The projected net dollar amounts such Class Member would

receive under this Settlement, as shown on Schedule 1, assuming

full payments of the Estates Distribution Payments and Cash

Payment;

(v)      That the Estates Distribution Payments may or may not equal the

Allowed Bankruptcy WARN and Wage Claims depending on

various factors and circumstances in the Bankruptcy Case;

(vi)     That each Class Member who does not opt out has the right to

object to this Settlement either in person or through counsel and be

heard at the Fairness Hearing; and

(vii)    That all Released Claims (as defined below) of a Class Member

(other than claims with respect to amounts to be paid under the

terms of this Settlement) shall be waived and any individual claim

of Class Members against the Debtors related to the claims made

in the WARN Action shall be deemed satisfied and expunged from

the applicable claims register maintained by the Bankruptcy Court,

and that no person, including the Class Member, shall be entitled

to any further distribution thereon.

11.     **Objection to Settlement Procedures**.    A Class Member may object to this

Settlement by sending timely written notice of such objection to Class Counsel and counsel to the

Debtors and Non-Debtor Defendants at the addresses set forth in Section 18(c) below and filing

such objection with the Bankruptcy Court.  Any such objections shall state (i) the objector's full

name, mailing address, and telephone number, (ii) if applicable, the full name, mailing address,

and telephone number of the objector's attorney, if any, and (iii) all reasons for objecting to the

Settlement and any supporting papers, materials, or briefs.  Any such objections must be sent/filed

such that they are received by Class Counsel, the Debtors, Non-Debtor Defendants and the

Bankruptcy Court by the objection deadline established by the Bankruptcy Court and/or applicable

law or rules of procedure, and served in accordance with the procedures set forth herein and in the

Preliminary Settlement Order.

12.     **Right of Employee to Opt Out of Class.**

(a)     Any Class Member may opt out of the Class by mailing to Class Counsel

the completed and executed Opt-Out Notice Form, contained in the Class Notice, such that it is

received no later than the opt-out deadline fixed by the Bankruptcy Court (which shall coincide

with the objection deadline).  Upon the timely and proper mailing of the Opt-Out Notice Form to

Class Counsel, such Class Member shall be classified as an Opt-Out.  Class Counsel shall provide

the Debtors and Non-Debtor Defendants with copies of the Opt-Out Notice Forms received from

Class Members upon request.  Otherwise, if and when the Settlement becomes effective, all Class

Members shall be bound by the terms of this Settlement.

(b)      Amounts attributable to Opt-Outs will be deducted from the amount of the

Allowed Bankruptcy WARN and Wage Claims.

(c)      Any Opt-Outs shall not have a claim against any of the Parties by reason of

this Settlement Agreement or otherwise, and shall retain his or her rights, if any, against the

Debtors and Non-Debtor Defendants.  The Debtors, their Estates and the Non-Debtor Defendants

reserve all rights against any Opt-Outs.  Class Counsel agrees that it will not, directly or indirectly,

commence any litigation or assert any claims on behalf of any former employees of the Debtors or

Non-Debtor Defendants who are Opt-Outs, nor any who are not encompassed by the Class as

defined herein.

13.    **Waiver and Release of Claims.**

(a)      <u>Released Claims of Class Members</u>.  Except for the rights expressly arising

out of, provided for, or reserved in this Settlement Agreement, upon the Effective Date, the Class

Members (but not the Opt-Outs), for and on behalf of themselves, and their respective predecessors,

successors, assigns, heirs, personal representatives and estates (collectively, the "<u>Releasing

Parties</u>"), do hereby fully and forever release and discharge the Non-Debtor Defendants and each

of the Estates and Debtors, and each of their respective current and former members, subsidiaries

and affiliated entities, and each of their respective officers, directors, shareholders, agents,

employees, partners, members, accountants, attorneys, insurers, financial advisors, representatives

and other agents, and all of their respective predecessors, successors and assigns (collectively, the

"<u>Released Parties</u>"), of and from any and all claims, demands, debts, liabilities, obligations, liens,

actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or

nature, at law, in equity and otherwise, whether known or unknown, anticipated, suspected or

disclosed, which the Releasing Parties may now have or hereafter may have against the Released

Parties which relate to or are based upon the WARN Act or any claim set forth in the WARN

Action, including any claims relating to wages and benefits as described therein (the "Released

Claims").  The Released Parties expressly reserve the right to object to, offset or oppose any and

all claims, obligations, or causes of action, of any type, except those claims expressly allowed

hereunder.  Upon the Effective Date, the Class Members agree that any Released Claims shall be

deemed waived without need for further court order, and the Class Members agree that any

Released Claims that have been scheduled on behalf of, or filed by, any Class Members in the

Bankruptcy Case are disallowed in their entirety and shall be deemed expunged from the applicable

schedule(s) or claims register(s). In addition, each Releasing Party shall be deemed, upon the

Effective Date, to have released each of the Class Representatives from any and all claims whether

liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not,

matured or unmatured, disputed or undisputed, legal or equitable, known or unknown that he or

she may have against the Class Representatives, any successors or assignees to their legal interests,

or any of their present or former agents, attorneys or consultants arising out of any Released Claim

or the terms of this Settlement.

(b)    To the fullest extent allowed under applicable law, each person and entity

granting a release under the Settlement hereby: (a) waives and relinquishes all statutory and

common law protections purporting to limit the scope or effect of a release, whether due to lack of

knowledge of any claim or otherwise, including, waiving and relinquishing the terms of any law,

which provides that a release may not apply to material unknown claims.  Accordingly, in the

event a Class Member should claim additional damages arising out of the matters released by this

Settlement, or discover new facts or claims, the Class Member will not be able to make any

additional claims or recover any additional damages.  Each Party represents, warrants, and agrees

that this waiver is a material term of this Settlement Agreement, without which no Party would

have entered into this Settlement.

(c)  Notwithstanding anything herein or in any pleadings relating to this

Settlement, nothing herein or therein shall be deemed to constitute a release by the Debtors or any

of their affiliates, or their Estates, of any claims whatsoever which such parties may have against

the Non-Debtor Defendants or any third parties.  Nothing herein or therein shall be deemed to

constitute a release by the Non-Debtor Defendants or any of their affiliates of any claims

whatsoever which such parties may have against the Debtors or any third parties.

(d)  <u>Dismissal of WARN Action as to the Debtors and Non-Debtor Defendants</u>.

A stipulation of dismissal with prejudice of the WARN Action as to the Debtors and Non-Debtor

Defendants, substantially in the form attached hereto as <u>Exhibit E</u> (the "<u>Dismissal</u>"), shall be

executed by the Parties.  Class Counsel shall file the Dismissal with the Bankruptcy Court upon

the Effective Date.  Dismissal of the WARN Action as to the Debtors and Non-Debtor Defendants

shall not abate or limit the effectiveness of this Settlement Agreement and the Final Settlement

Order, including the releases set forth herein.

14.  **No Litigation.**  Except as may be necessary to enforce the terms of this Settlement,

the Parties agree that they shall not commence or proceed with any action, claim, suit, proceeding

or litigation, including the filing of any proof of claim in the Bankruptcy Case, with respect to the

Released Claims, or take any action inconsistent with the terms of the Settlement.

15.  **No Admission of Liability.**  This Settlement is intended to settle and dispose of

the Released Claims.  Nothing herein shall constitute or be construed as an admission by the

Estates, Debtors or Non-Debtor Defendants of any facts or liability of any kind.  The Parties

acknowledge and agree that they are entering into this Settlement Agreement to avoid further costs of litigation and that the Estates, the Debtors and Non-Debtor Defendants do not admit, and specifically deny, any liability under the WARN Act and/or any law pursuant to which claims were asserted in the WARN Action.

16.  **Representations and Warranties**.  The Parties represent and warrant that upon Bankruptcy Court approval of this Settlement, all will have the legal right and authority to enter into this Settlement and the transactions and releases contemplated hereby.

17.  **Further Assurances.**  The Parties shall cooperate fully and shall execute and deliver any and all supplemental papers, documents, instruments and other assurances and shall do any and all acts that may be reasonably necessary or appropriate to give full force and effect to the terms and intent of this Settlement.

18.  **Miscellaneous**.

(a)  Continuing Jurisdiction of Bankruptcy Court.  The Bankruptcy Court shall have full jurisdiction over this Settlement and any dispute or controversy arising from or related to the interpretation or enforcement of this Settlement.

(b)  Governing Law/Jurisdiction.  Except where superseded by applicable federal law, this Settlement shall be governed by the internal laws of the State of West Virginia, without regard to conflict of law principles.

(c)  Notices.  Any notice or other communication required or permitted to be delivered under this Settlement shall be (i) in writing, (ii) delivered personally, by courier service or by certified or registered mail, first-class postage prepaid and return receipt requested, (iii) deemed to have been received on the date of delivery, and (iv) addressed as follows (or to

such other address as the party entitled to notice shall hereafter designate by a written notice filed

with the Bankruptcy Court):

**If to the Debtors, to**

SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Attention: Stephen D. Lerner, Esq.
            Nava Hazan, Esq.

**If to the Non-Debtor Defendants, to**

LEXINGTON COAL COMPANY, LLC
Helena R. Jackson, Esq.
164 Main Street, Suite 401
Pikeville, Kentucky 41501
hj@lexingtoncoal.us
859.533.4901

DINSMORE & SHOHL LLP
Janet Smith Holbrook (WVSBN 5853)
John (J.H.) Harlan Mahaney (WVSBN 6993)
Alexis B. Mattingly (WVSBN 10286)
611 Third Avenue
Huntington, West Virginia 25701
(304) 529-6181 Phone
(304) 522-4312 Fax
Janet.holbrook@dinsmore.com
John.mahaney@dinsmore.com
alexis.mattingly@dinsmore.com

**If to Class Members or Class Counsel, to:**

LANKENAU & MILLER LLP
132 Nassau Street, Suite 1100
New York, New York 10038
Attention:  Stuart J. Miller, Esq.

and

THE GARDNER FIRM, P.C.
182 St. Francis Street, Suite 103
Mobile, Alabama 36602
Attention:  Mary E. Olsen, Esq.

21

(d)     _Severability_.  Should any provision(s) of this Settlement Agreement be declared or be determined by any court of competent jurisdiction to be illegal, invalid, and/or unenforceable, then the legality, validity, and/or enforceability of the remaining parts, terms, and/or provisions shall not be affected thereby, and said illegal, unenforceable, and/or invalid part, term, and/or provision shall be deemed not to be a part of this Settlement Agreement.

(e)     _Amendments_.   This Settlement may not be modified, amended or supplemented by the Parties except by a written agreement that the Parties have signed with any required approval of the Bankruptcy Court.

(f)     _Integration_.  This Settlement contains the entire, final, and fully-integrated agreement of the Parties with respect to the matters covered by this Settlement, and supersedes all prior statements, discussions, agreements, representations, or understandings. No promise, understanding, agreement, or representation made by any Party, or any respective agent, director, officer, employee, financial advisor or attorney of a Party, that is not expressly contained in this Settlement shall be binding or valid.  All Parties agree and represent that they are not relying on any promise, inducement, or understanding not expressly set forth in the language of this Settlement Agreement.

(g)     _Interpretation_.  This Settlement was the product of negotiations between the Parties and any rule of construction requiring that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement.

(h)     _Headings_.  The headings of this Settlement are for convenience only and are not part of the Settlement and do not in any way define, limit, extend, describe or amplify the terms, provisions or scope of this Settlement and shall have no effect on its interpretation.  Where

appropriate, the use of the singular shall include the plural and the use of the masculine gender shall include the feminine gender as well.

(i)     <u>Signatures</u>.   Facsimile or other electronic copies of signatures on this Settlement are acceptable, and a facsimile or other electronic copy of a signature on this Settlement shall be deemed to be an original.

(j)     <u>Counterparts</u>.   This Settlement may be executed in one or more counterparts, each of which together or separately shall constitute an original and which, when taken together, shall be considered one and the same binding agreement.

(k)     <u>Cooperation</u>. The Parties agree to cooperate with one another to effectuate an efficient and equitable implementation of this Settlement.

(l)     <u>Binding Nature of Settlement</u>.   This Settlement shall be binding upon and shall inure to the benefit of the Parties and their respective successors, transferees, assigns, heirs and estates.

(m)     <u>Effect of Waiver of Breach</u>.   The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any prior or subsequent breach of this Settlement Agreement.

(n)     <u>Receipt of Advice of Counsel</u>.   The Parties acknowledge, agree, and specifically warrant to each other that they have fully read this Settlement Agreement, received legal advice with respect to the advisability of entering into this Settlement Agreement and with respect to the legal effect of this Settlement Agreement.   The Parties further acknowledge, agree, and specifically warrant that they fully understand the legal effect of this Settlement Agreement.

(o)     <u>Opportunity to Investigate</u>.   The Parties acknowledge, agree, and specifically warrant to each other that they and their counsel have had adequate opportunity to

make whatever investigation and inquiries deemed necessary or desirable in connection with the subject matter of this Settlement Agreement and the advisability of entering into this Settlement Agreement.

(p)     <u>Good Faith Settlement</u>.  The Parties acknowledge, agree, and specifically warrant to each other that they are entering into this Settlement Agreement freely, without duress, in good faith, and at arms' length.

(q)     <u>Preservation of Privilege</u>.  Nothing contained in this Settlement Agreement or any order of the Bankruptcy Court and no act required to be performed pursuant to this Settlement Agreement or any order of the Bankruptcy Court is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege.

(r)     <u>Nonadmissibility</u>.  The negotiations resulting in this Settlement Agreement have been undertaken by the Parties and their respective counsel in good faith and for settlement purposes only.  No evidence of negotiations or discussions underlying this Settlement Agreement shall be offered or received in evidence for any purpose in any action or proceeding.

IN WITNESS WHEREOF, the Parties have executed and delivered this Settlement as of the date first written above.

On behalf of the Debtors

By:    */s/ David Beckman*
       Name: David Beckman
       FTI Consulting, Inc.

DINSMORE & SHOHL LLP
on behalf of Jeff Hoops, Sr. and Jeffery A. Hoops, II

By:    */s/ Alexis B. Mattingly*
       Name: Alexis B. Mattingly
       Title:  Counsel for Jeff Hoops, Sr. and Jeffery A. Hoops, II

Helena R. Jackson, Esq.
General Counsel,
on behalf of Lexington Coal Co., LLC

By:    */s/ Helena R. Jackson*
       Name: Helena R. Jackson
       Title:  Counsel for Lexington Coal Co., LLC

LANKENAU & MILLER LLP,
on behalf of the Class Representatives and Class Members

By:  */s/ Stuart J. Miller*
       Name: Stuart J. Miller
       Title:  Proposed Class Counsel

THE GARDNER FIRM, PC,
on behalf of the Class Representatives and Class
Members

By:   */s/ Mary E. Olsen*
      Name:  Mary E. Olsen
      Title:   Proposed Class Counsel

PETSONK PLLC,
on behalf of the Class Representatives and Class
Members

By:   */s/ Sam Petsonk*
      Name:  Sam Petsonk
      Title:   Proposed Class Counsel

MOUNTAIN STATE JUSTICE, INC.,
on behalf of the Class Representatives and Class
Members

By:   */s/ Bren J. Pomponio*
      Name:  Bren J. Pomponio
           Clint Carte
      Title:   Proposed Class Counsel

PILLERSDORF LAW OFFICE,
on behalf of the Class Representatives and Class
Members

By:   */s/ Ned Pillersdorf*
      Name:  Ned Pillersdorf
      Title:   Proposed Class Counsel

Case 3:19-ap-03002   Doc 102-1   Filed 09/01/21   Entered 09/01/21 17:46:04   Desc
Exhibit A   Page 28 of 94

## SCHEDULE 1

[Submitted Under Seal]

Case 3:19-ap-03002   Doc 61-1   Filed 09/01/20   Entered 09/01/20 17:16:47   Desc
Exhibit A   Page 29 of 94

# EXHIBIT A

<u>Preliminary Settlement Order</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| In re:<br><br>**BLACKJEWEL, L.L.C.,** *et al.*<br>                                  **Debtors**<br>-----------------------------------------------------------<br>**DAVID ENGELBRECHT, JOSIAH WILLIAMSON, GREGORY MEFFORD on behalf of themselves and all others similarly situated,**<br><br>                       **Plaintiffs,**<br><br>v.<br><br>**BLACKJEWEL, L.L.C.,**<br><br><br>                       **Defendants.**<br>----------------------------------------------------------- | **Chapter 11**<br>**Case No. 19-bk-30289**<br>**(Jointly Administered)**<br><br><br><br>**Adversary Proceeding**<br>**No. 3:19-ap-03002** |
| In re:<br><br>**BLACKJEWEL, L.L.C.,** *et al.*<br>                                  **Debtors**<br>-----------------------------------------------------------<br>**SHAWN ABNER, JACOB HELTON, AND BILLY HATTON on behalf of themselves and all others similarly situated,**<br><br>                       **Plaintiffs,** | **Chapter 11**<br>**Case No. 19-bk-30289**<br>**(Jointly Administered)**<br><br><br><br>**Adversary Proceeding**<br>**No. 3:19-ap-03003** |

**v.**

**BLACKJEWEL, L.L.C., REVELATION
ENERGY, LLC, LEXINGTON COAL CO., LLC,
JEFF HOOPS, SR., JEFFERS A. HOOPS, II,**

                        **Defendants.**

---------------------------------------------------------

### ORDER PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 7023 AND 9019 (I) PRELIMINARILY APPROVING THE SETTLEMENT, (II) CERTIFYING A CLASS OF WARN ACT CLAIMANTS FOR SETTLEMENT PURPOSES ONLY, (III) APPOINTING CLASS COUNSEL AND CLASS REPRESENTATIVES, (IV) APPROVING THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE CLASS CERTIFICATION AND SETTLEMENT, (V) SCHEDULING A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT, AND (VI) GRANTING RELATED RELIEF

Upon the Joint Motion of Plaintiffs David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton (the "Plaintiffs"), together with Blackjewel, L.L.C. and Revelation Energy, LLC (together, the "Debtors" or "Debtor-Defendants") and Lexington Coal Co., LLC, Jeff Hoops, Sr., and Jeffery A. Hoops, II (the "Non-Debtor Defendants" and, collectively with the Debtor-Defendants, the "Defendants" and, together with the Plaintiffs, the "Parties"), by and through their respective counsel, pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 9019 and 7023 for the entry of an Order (1) approving the Settlement, Release and Allowance of Claim Agreement (the "Settlement Agreement"); (2) preliminarily approving the Settlement Agreement pursuant to Bankruptcy Rule 7023; (3) certifying the WARN Class for settlement purposes only, including the appointment of Lankenau & Miller, LLP, The Gardner Firm, P.C., Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf Law Office as Class Counsel and David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton, as Class Representatives; (4) approving the form and manner of notice of the Settlement to the members of the Class (the "Class Notice");

(5) scheduling a fairness hearing to consider final approval of the Settlement Agreement (the "Fairness Hearing"); (6) finally approving the Settlement Agreement following the fairness hearing (the "Final Settlement Order"); and (7) granting related relief (the "Joint Motion");[1] and the Court having considered the Joint Motion and any opposition thereto; and the Court having found that proper and sufficient notice of the Joint Motion has been given and that no further notice of the Joint Motion is required except as set forth herein; and that, based on the range of possible outcomes and the cost, delay, and uncertainty associated with further litigation, the Settlement Agreement is reasonable and preliminary approval of the Settlement Agreement is warranted and in the best interest of the Estates;

**IT IS HEREBY ORDERED THAT:**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.      The Settlement is preliminarily approved, subject to final approval at the Fairness Hearing.

4.      The Class is certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, as applicable through Rule 7023 of the Federal Rules of Bankruptcy Procedure, and is comprised of all persons who were employed by the Debtors at facilities located in the Eastern Division and the Western Division and who ceased working for the Debtors on or after July 1, 2019 solely, and who do not file a timely request to opt out of the Class.

5.      David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton are appointed as Class Representatives.

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to them in the Joint Motion or the Settlement Agreement, as applicable.

6.      Lankenau & Miller, LLP, The Gardner Firm, P.C., Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf Law Office are appointed Class Counsel pursuant to Civil Rule 23(c)(1)(B).

7.      The Class Notice, substantially in the form annexed to the Settlement as Exhibit D, meets the requirements of Fed. R. Civ. P. 23(c)(2)(B) and is hereby approved.

8.      Notice to the Class Members identified in Schedule 1 attached to the Settlement Agreement by first class mail; postage prepaid, at their last known address is reasonable and the best notice practicable under the circumstances and constitutes due and sufficient notice to all potential Class Members in full compliance with the notice requirements of Fed. R. Civ. P. 23 and such mailing shall be made by Class Counsel within five (5) business days following entry of this Order.

9.      Notwithstanding anything herein or in any pleadings relating to the Settlement, nothing herein or therein shall be deemed to constitute a release by the Debtors or any of their affiliates, or their Estates, of any claims whatsoever which such parties may have against the Non-Debtor Defendants or any third parties. Nothing herein or therein shall be deemed to constitute a release by the Non-Debtor Defendants or any of their affiliates of any claims whatsoever which such parties may have against the Debtors or any third parties.

10.     Any Class Members who wish to file an objection to the proposed Settlement or exercise their right to opt-out of the Class must do so in accordance with the deadlines and instructions set out in the Class Notice.  Any such opt-outs or objections must be received by the entities listed in the Class Notice no later than thirty-five (35) days following the date of mailing of the Class Notice.

Case 3:19-ap-03002   Doc 102-1   Filed 09/01/21   Entered 09/01/21 17:46:04   Desc
Exhibit A   Page 34 of 54

11.     The final Fairness Hearing regarding the Settlement Agreement is scheduled to be held on **_____, 2020 at _____ _.m. prevailing Eastern Time**.  The final Fairness Hearing may be continued from time to time by the Court without further notice other than the announcement of the adjourned date(s) at the final Fairness Hearing or any continued hearing.

12.     The Court shall retain jurisdiction over all matters arising pursuant to or related to the relief granted by this Order.

Case 3:19-ap-03002    Doc 61-1    Filed 09/01/20    Entered 09/01/20 17:10:47    Desc
Exhibit 1A    Page 35 of 94

**EXHIBIT B**

Final Settlement Order

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: | |
| | **Chapter 11** |
| **BLACKJEWEL, L.L.C.,** *et al.* | **Case No. 19-bk-30289** |
| **Debtors** | **(Jointly Administered)** |
| ---------------------------------------------------- | |
| **DAVID ENGELBRECHT, JOSIAH WILLIAMSON, GREGORY MEFFORD** on behalf of themselves and all others similarly situated, | **Adversary Proceeding No. 3:19-ap-03002** |
| **Plaintiffs,** | |
| **v.** | |
| **BLACKJEWEL, L.L.C.,** | |
| **Defendants.** | |
| ---------------------------------------------------- | |
| In re: | |
| | **Chapter 11** |
| **BLACKJEWEL, L.L.C.,** *et al.* | **Case No. 19-bk-30289** |
| **Debtors** | **(Jointly Administered)** |
| ---------------------------------------------------- | |
| **SHAWN ABNER, JACOB HELTON, AND BILLY HATTON** on behalf of themselves and all others similarly situated, | **Adversary Proceeding No. 3:19-ap-03003** |
| **Plaintiffs,** | |

**v.**

**BLACKJEWEL, L.L.C.,  REVELATION
ENERGY, LLC, LEXINGTON COAL CO., LLC,
JEFF HOOPS, SR., JEFFERS A. HOOPS, II,**

                  **Defendants.**

-----------------------------------------------------------

## FINAL ORDER APPROVING SETTLEMENT UNDER FEDERAL RULE OF CIVIL PROCEDURES 23 AND FEDERAL BANKRUPTCY RULES 7023 AND 9019

**UPON** the Order dated _____, 2020 [Dkt. No. \_\_] (the "Preliminary Settlement Order") preliminarily approving the Joint Motion of Plaintiffs David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton (the "Plaintiffs"), together with Blackjewel, L.L.C. and Revelation Energy, LLC (the "Debtors" or "Debtor-Defendants") and Lexington Coal Co., LLC, Jeff Hoops, Sr., and Jeffery A. Hoops, II (the "Non-Debtor Defendants" and, collectively with the Debtor-Defendants, the "Defendants" and, together with the Plaintiffs, the "Parties"), by and through their respective counsel, pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 9019 and 7023 for the entry of an Order (1) approving the Settlement, Release and Allowance of Claim Agreement (the "Settlement Agreement"); (2) preliminarily approving the Settlement Agreement pursuant to Bankruptcy Rule 7023; (3) certifying the WARN Class for settlement purposes only, including the appointment of Lankenau & Miller, LLP, The Gardner Firm, P.C., Petsonk PLLC,  Mountain State Justice, Inc. and Pillersdorf Law Office as Class Counsel and David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton as Class Representatives; (4) approving the form and manner of notice of the Settlement to the members of the Class (the "Class Notice"); (5) scheduling a fairness hearing to consider final approval of the Settlement Agreement (the "Fairness Hearing"); (6) finally approving the Settlement

Agreement following the fairness hearing (the "<u>Final Settlement Order</u>"); and (7) granting related relief (the "<u>Joint Motion</u>");[1] the Court having reviewed the Joint Motion and any objections thereto, and being fully advised; the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) notice of the Joint Motion and the hearing thereon was sufficient under the circumstances, and (d) the Court having reviewed the terms of the Settlement; and the Court having determined that the legal and factual bases set forth in the Joint Motion establish just cause for the relief granted herein; the Court having determined that the relief sought in the Joint Motion is in the best interest of the Estates; and after due deliberations and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Joint Motion is GRANTED in its entirety.

2.      All objections to the Joint Motion or the relief requested in the Joint Motion, if any, that have not been withdrawn, waived or settled, and all reservations of rights in such objections, if any, shall be and hereby are, OVERRULED in all respects on the merits and denied.

3.      The Settlement Agreement, a true and correct copy of which is attached to the Joint Motion as <u>Exhibit A</u>, is approved in all respects as being fair, reasonable, adequate and falling within the range of reasonableness.

4.      The Settlement shall become binding upon the Parties and the Class, as set forth in the Settlement.

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to them in the Joint Motion or the Settlement Agreement, as applicable.

5.     Notwithstanding anything herein or in any pleadings relating to the Settlement, nothing herein or therein shall be deemed to constitute a release by the Debtors or any of their affiliates, or their Estates, of any claims whatsoever which such parties may have against the Non-Debtor Defendants or any third parties. Nothing herein or therein shall be deemed to constitute a release by the Non-Debtor Defendants or any of their affiliates of any claims whatsoever which such parties may have against the Debtors or any third parties.

6.     The entry of this Order is without prejudice to the relief granted in the Preliminary Settlement Order, and entry of this Order shall not serve to extend or stay the time of filing any appeal regarding any of the relief granted in the Preliminary Settlement Order.

7.     The Parties are hereby authorized and empowered to take such steps and perform such acts as may be necessary to carry out the terms of this Order and the Settlement Agreement.

8.     Upon the Effective Date and except for the rights expressly arising out of, provided for, or reserved in the Settlement, the Class Members (excluding Opt-Outs), fully and forever release and discharge the Released Parties of and from the Released Claims.  Further, upon the Effective Date, as defined in the Settlement, all Released Claims shall be deemed waived and any Released Claims that have been scheduled on behalf of, or filed by, any Class Members in the Bankruptcy Case are disallowed in their entirety and shall be deemed expunged from the applicable schedule(s) or claims register(s) without the need for any further action.

9.     This Court shall retain jurisdiction over all matters arising from or related to the interpretation and/or implementation of this Order.

10.     This Order is effective immediately upon entry.

4

Case 3:19-ap-03002   Doc 61-1   Filed 09/01/21   Entered 09/01/20 17:10:07   Desc
Exhibit 1   Page 73 of 94

**EXHIBIT C**

Excluded Employees

[Submitted Under Seal]

**EXHIBIT D**

<u>Class Notice</u>

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: | **Chapter 11** |
| | **Case No. 19-bk-30289** |
| **BLACKJEWEL, L.L.C.,** *et al.* | **(Jointly Administered)** |
| Debtors | |
| -------------------------------------------------------- | |
| DAVID ENGELBRECHT, JOSIAH | |
| WILLIAMSON, GREGORY MEFFORD on behalf | |
| of themselves and all others similarly situated, | **Adversary Proceeding** |
| | **No. 3:19-ap-03002** |
| Plaintiffs, | |
| | |
| v. | |
| | |
| **BLACKJEWEL, L.L.C.,** | |
| | |
| Defendants. | |
| -------------------------------------------------------- | |

| | |
|---|---|
| In re: | **Chapter 11** |
| | **Case No. 19-bk-30289** |
| **BLACKJEWEL, L.L.C.,** *et al.* | **(Jointly Administered)** |
| Debtors | |
| -------------------------------------------------------- | |
| SHAWN ABNER, JACOB HELTON, AND BILLY | |
| HATTON on behalf of themselves and all others | |
| similarly situated, | **Adversary Proceeding** |
| | **No. 3:19-ap-03003** |
| Plaintiffs, | |
| | |
| v. | |
| | |
| **BLACKJEWEL, L.L.C.,  REVELATION** | |
| **ENERGY, LLC, LEXINGTON COAL CO., LLC,** | |
| **JEFF HOOPS, SR., JEFFERS A. HOOPS, II,** | |
| | |
| Defendants. | |
| -------------------------------------------------------- | |

**NOTICE TO CLASS OF
(A) THE CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES ONLY;
(B) THE PROPOSED SETTLEMENT OF THE WARN ACTION; (C) A DESCRIPTION
OF THE PROPOSED SETTLEMENT; (D) THE DATE OF THE BANKRUPTCY
COURT HEARING FOR FINAL APPROVAL OF THE SETTLEMENT; (E) THE
RIGHT OF EACH MEMBER OF THE CLASS TO OBJECT TO THE SETTLEMENT,
AND TO APPEAR AT THE HEARING AT WHICH THE BANKRUPTCY COURT
WILL CONSIDER THE FINAL APPROVAL OF THE SETTLEMENT; AND (F) THE
RIGHT OF CLASS MEMBERS TO OPT-OUT OF THE CLASS**

TO:     All persons who were employed by the Debtors, as defined below, at facilities located in the Central Appalachian Coal Basin in West Virginia, Virginia and Kentucky (the "Eastern Division") and in the Powder River Basin in Wyoming (the "Western Division") who ceased working for the Debtors on or after July 1, 2019 solely, and who do not file a timely request to opt-out (the "Class").

## BACKGROUND

The Plaintiffs David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton (collectively, the "Plaintiffs" or "Class Representatives") filed a complaint (the "WARN Action") against Blackjewel, L.L.C. and Revelation Energy, LLC (together, the "Debtors" or "Debtor-Defendants") and Lexington Coal Co., LLC, Jeff Hoops, Sr. and Jeffery A. Hoops, II (together, the "Non-Debtor Defendants," and collectively with the Debtor-Defendants, the "Defendants"), for allegedly failing to provide sixty (60) days' advance written notice as required by the Worker Adjustment and Retraining Act, 29 U.S.C. §§ 2101, et seq. (the "WARN Act"), before allegedly ordering mass layoffs and/or plant closings on or about July 1, 2019 and thereafter, and for alleged wage and hour and other employment and employee benefits-related claims.  The Defendants and Plaintiffs are collectively referred to herein as the "Parties," or, as to each, a "Party."

The claims set forth in the WARN Action are disputed by the Defendants.  However, following a Court ordered-mediation and extended settlement negotiations, conducted in good faith and at arms' length, the Parties reached agreement on a compromise that will resolve the WARN Action titled *Settlement, Release and Allowance of Claim Agreement* (the "Settlement" or "Settlement Agreement")[1] under which the benefits described below will be provided to the members of the Class. All Parties, including Class Counsel (as defined below), believe the Settlement is fair and reasonable and that continued litigation of the WARN Action would be complicated, protracted and expensive and would further deplete the Debtors' resources.

## THE PROPOSED SETTLEMENT AGREEMENT

The terms of the Settlement are embodied in a settlement agreement entered into between the Parties. The following description of the proposed Settlement, which was preliminarily approved by the Court on _____, 2020, is only a summary. In the event of any discrepancy between this summary and the terms of the Settlement Agreement, the terms of the Settlement

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings given to them in the Settlement.

Agreement shall control. The Settlement Agreement shall become effective only if it is finally approved by the Bankruptcy Court. You may secure a copy of the complete Settlement Agreement from Class Counsel, Mary Olsen, at (251) 415-4978 or at the address shown for her below. The relevant terms of the Settlement may be summarized as follows:

## SUMMARY OF THE TERMS OF THE SETTLEMENT AGREEMENT

The Parties have agreed to certification of a class (the "Class"), for settlement purposes only, comprised of all persons who were employed by the Debtors at facilities located in the Eastern Division and the Western Division and who ceased working for the Debtors on or after July 1, 2019 solely, and who do not file a timely request to opt out of the Class. The Class is represented by David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton (the "Class Representatives") and Lankenau & Miller, LLP, The Gardner Firm, P.C., Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf Law Office are counsel to the Class ("Class Counsel").

Upon the Effective Date of the Settlement Agreement and in exchange for a full release of any claims under the WARN Act and other claims asserted in the WARN Action, (i) the Debtor-Defendants have agreed that the Class Members will be granted a) an allowed priority claim jointly and severally against the Debtors, pursuant to 11 U.S.C. § 507(a)(4) and (a)(5) of the Bankruptcy Code, equal to sixty percent (60%) of sixty (60) days' of wages and benefits for each Class Member, in the aggregate amount of $14,630,825.63, and an allowed priority wage claim under 11 U.S.C. § 507(a)(4) of the Bankruptcy Code in the aggregate amount of $2,711,494.11 for up to eight (8) days of pay for each Class member in resolution of their wage claims (together, the "Allowed Bankruptcy WARN and Wage Claims"), which amount shall be subject to a statutory cap in the amount of $13,650.00 per employee pursuant to 11 U.S.C. § 507(a)(4) of the Bankruptcy Code and (ii) the Non-Debtor Defendants have agreed to make a cash payment of $125,000, which will be distributed from a Qualified Settlement Fund established by the Class Counsel in accordance with the terms of the Settlement Agreement. Pursuant to the Settlement, if approved, the Allowed Bankruptcy WARN and Wage Claims is an allowed claim.  As further explained below, it does not mean that such claim will be paid in full and payment may or may not occur depending on numerous factors and circumstances in the Bankruptcy Case.

The distributions from the Debtors' estates (the "Estates") on account of the Allowed Bankruptcy WARN and Wage Claims (the "Estates Distribution Payments") will be made by the Debtors in accordance with the priority scheme established by the Bankruptcy Code  to a qualified settlement fund to be established by Class Counsel in conformity with Internal Revenue Code § 468B (the "Qualified Settlement Fund") pursuant to written instructions to be provided by Class Counsel. The Class acknowledges that the Allowed Bankruptcy WARN and Wage Claims is an allowed claim to be paid in accordance with the priority scheme established by the Bankruptcy Code and that such claim may or may not be paid depending on the distributions available to creditors of the Debtors' Estates and may not be paid or funded in full.

The Cash Payment shall be made via wire transfer by the Non-Debtor Defendants within five (5) business days of the Effective Date to the Qualified Settlement Fund pursuant to written

instructions to be provided by Class Counsel.  The name of the Qualified Settlement Fund shall be *Engelbrecht v. Blackjewel QSF*, and Class Counsel or the Administrator of the Qualified Settlement Fund shall provide the Debtors and the Non-Debtor Defendants with a W-9 form for the Qualified Settlement Fund to enable the Estates Distribution Payments and the Cash Payment, respectively to the Qualified Settlement Fund.

Class Counsel shall act as the trustee of the Qualified Settlement Fund.  Class Counsel shall cause each Class Member's distribution to be paid from the Qualified Settlement Fund, and shall transmit distributions via first class U.S. Mail to the Class Members at their last known address as indicated on Schedule 1 to the Settlement Agreement (or to such other address as the Class Members may indicate to Class Counsel or which Class Counsel may locate), in accordance with applicable law.  By accepting his or her portion of the Qualified Settlement Fund, each Class Member agrees that he or she will be solely responsible for any and all tax liabilities stemming from the payment of his or her claim under the Settlement Agreement.  The Parties agree that the Estates Distribution Payments shall be the only payments to be made by the Debtors under this Settlement Agreement and that the Cash Payment shall be the only payment to be made by the Non-Debtor Defendants under this Settlement Agreement. Under no circumstances shall the Estates or Non-Debtor Defendants be required under the Settlement to pay any sums or other consideration in addition to the Estates Distribution Payments or Cash Payment for any purpose whatsoever.

In the event the amount of the Estates Distribution Payments is sufficient to make a full payment on the Allowed Bankruptcy WARN and Wage Claims, the total amount distributed to each Class Member on the Allowed Bankruptcy WARN and Wage Claims shall equal the amount listed on Schedule 1 to the Settlement Agreement for those claims.  In the event the amount of the Allowed Bankruptcy WARN and Wage Claims is greater than the Estates Distribution Payments, the Class Members' distributions shall be reduced on a *pro rata* basis so all Class Members receive an equal percentage of the Estates Distribution Payments. For the avoidance of doubt, the Class Counsel's Fees, Class Counsel's Expenses and the Class Representative Service Payments are payable solely out of the Qualified Settlement Fund, consistent with the terms of the Settlement Agreement, and such fees, expenses and payments are included in the amount of the Allowed Bankruptcy WARN and Wage Claims as set forth in Schedule 1 to the Settlement Agreement and not in addition to such amount.

The Class Representatives shall receive an aggregate one-time payment from the first distribution from the Qualified Settlement Fund of $30,000, to be allocated as follows:  $5,000 each to David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton for their service in this matter (together, the "<u>Class Representative Service Payments</u>").  Class Counsel shall distribute this payment to the Class Representatives, in addition to each Class Representative's individualized disbursements on account of the Settlement payments contemplated therein.[2]  Class Counsel's Fees will not be deducted from the Class Representative Service Payments.

Class Counsel is entitled to attorneys' fees ("<u>Class Counsel's Fees</u>") in the amount of one-

---

[2] For avoidance of doubt, the Class Representative Service Payments shall have no affect on the priority amounts available to the Class Representatives for their individualized Allowed Bankruptcy WARN and Wage Claims.

third (1/3) of each distribution on the Estates Distribution Payments and Cash Payment, net of the one-time $30,000 aggregate payment for Class Representative Service Payments.  In addition, Class Counsel is entitled to its litigation expenses (including costs associated with the production and mailing of the Class Notice and the administration of the Settlement, estimated to be approximately $75,000) ("Class Counsel's Expenses").  Class Counsel's Fees and Class Counsel's Expenses, as well as the Representative Service Payments, shall be paid exclusively by the Qualified Settlement Fund.  Class Counsel's Fees and Class Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter.

## CLASS COUNSEL'S RECOMMENDATION AND YOUR PROJECTED RECOVERY

Class Counsel recommends the Settlement, believing that it is fair, reasonable and adequate to the Class.

The projected net dollar amount which you would receive under the Settlement ("Projected Payment"), assuming that the Allowed Bankruptcy WARN and Wage Claims are paid in full, which may or may not occur depending on numerous factors and circumstances in the Bankruptcy Case, is shown on Exhibit A, hereto.

## RELEASE OF CLAIMS AND EFFECT OF APPROVAL OF SETTLEMENT AGREEMENT

Upon the Effective Date, all Released Claims against the Released Parties, including any and all individual claims asserted by Class Members against the Debtors related to the claims set forth in the WARN Action shall be deemed satisfied and expunged, without need for further court order, and the Class Members agree that any Released Claims that have been scheduled on behalf of, or filed by, any Class Members in the Bankruptcy Case are disallowed in their entirety and shall be deemed expunged from the applicable schedule(s) or claims register(s) without need for further court order. Payment on account of such claims shall be limited solely to the Estates Distribution Payments and Cash Payment.

Proofs of claim filed by individuals who choose to timely opt-out of the WARN Class shall be unaffected by the release contained in the Settlement.

## HOW TO OBJECT OR OPT-OUT

If you are satisfied with the proposed Settlement and your projected Payment Amount (assuming full funding of the Allowed Bankruptcy WARN Claims which may or may not occur) as shown on Exhibit A, you need to do nothing and you will receive your share of any distributions made from the Qualified Settlement Fund.

If, on the other hand, you believe that the proposed Settlement is unfair or inadequate or believe that it should not be approved, you may object by mailing, via first class U.S. Mail, a written statement bearing the caption of this action (shown on the first page of this Notice) with the basis for your objection, to the Clerk of the United States Bankruptcy Court for the Southern District of West Virginia, 300 Virginia Street East, Room 2400, Charleston, West Virginia

25301, and by sending copies of that statement, also by first class U.S. Mail, to: 1) Mary E. Olsen, The Gardner Firm, P.C., 182 St. Francis Street, Suite 103, Mobile, Alabama 36602; and 2) Stephen Lerner and Nava Hazan, Squire Patton Boggs (US) LLP, 201 E. Fourth Street, Suite 1900, Cincinnati, Ohio 45202. Objections must be mailed so as to be received no later than _____, 2020, and must include your name, address, and telephone number, together with a statement of whether you wish to be heard personally or by counsel at the final hearing at which the Parties will be requesting binding Bankruptcy Court approval of the Settlement.

You may also appear in person or by counsel at the final hearing described below.

If you choose not to be bound by this Settlement and do not wish to share in any of the benefits described herein, you may opt-out of the Class by filling out the attached "Opt-Out Form," and signing and mailing that form by first class U.S. Mail, to: Class Counsel, Attn: Mary E. Olsen, Esq., The Gardner Firm, P.C., 182 St. Francis Street, Suite 103, Mobile, Alabama 36602. The "Opt-Out Form" form must be **received** no later than _____, **2020**. All requests for exclusion received after that date will not be effective, and any person who sends a late request will be a member of the Class.

## FINAL HEARING TO APPROVE SETTLEMENT

The hearing for final consideration and approval of the Settlement is scheduled to take place on _____, at ____ p.m. (EDT) at the Robert C. Byrd U.S. Courthouse, 300 Virginia Street East, Charleston, West Virginia 25301, before the Honorable Benjamin A. Kahn. That hearing may be adjourned without further notice. If you wish to determine if the hearing is adjourned, you may contact Mary E. Olsen at the address shown above.

## OTHER INFORMATION

All requests for more information, including a copy of the Settlement should be directed to Ms. Olsen.  Her contact information is as follows: Mary E. Olsen, Esq., The Gardner Firm, P.C., 182 St. Francis Street, Suite 103 Mobile, AL 36602; email: molsen@thegardnerfirm.com; phone: (251) 415-4978.

While the Bankruptcy Court has approved the sending of this Notice, it has not taken any position as to the respective claims or defenses asserted by the Parties in the WARN Action.

## PLEASE DO NOT WRITE TO OR CALL THE COURT CONCERNING THIS MATTER

*David Engelbrecht, Josiah Williamson and Gregory Mefford, on their own behalf and on behalf of all other persons similarly situated v. Blackjewel, LLC*; **Adversary Proceeding No. 19-ap-3002 and** *Shawn Abner, Jacob Helton and Billy Hatton individually and on behalf of others similarly situated v. Blackjewel, LLC, Revelation Energy, LLC, Lexington Coal Co., LLC, Jeff Hoops, Sr., Jeffery A. Hoops, II*, **Adversary Proceeding No. 19-ap-03003**

## OPT-OUT FORM

I, the undersigned, have read the foregoing Settlement Class Notice and understand its contents.

I **DO NOT** want to participate in the above WARN Action and **DO NOT** wish to receive any benefits from or be bound by the Settlement described herein.

_____          _____
SIGNATURE                                              ADDRESS

_____          _____
NAME (printed or typed)                        CITY, STATE and ZIP CODE

_____          _____
DATE                                                     TELEPHONE

_____
EMAIL ADDRESS

If you do **NOT** wish to participate, send this completed form to:

THE GARDNER FIRM, P.C.
182 St. Francis Street, Suite 103
Mobile, Alabama 36602
Attention:  Mary E. Olsen, Esq.

Case 3:19-ap-03002   Doc 62-1   Filed 09/01/20   Entered 09/01/20 17:46:04   Desc
Exhibit A   Page 82 of 104

# EXHIBIT  A

«AddressBlock»

| Projected Payment After the Deduction of Service Payments, Class Counsel's Fees, and Class Counsel's Expenses, and Assuming That the Allowed Bankruptcy WARN and Wage Claims Are Fully Funded, Which May or May Not Occur Depending on Numerous Factors and Circumstances in the Bankruptcy Case | $«_____» |
|---|---|

Case 3:19-ap-03002   Doc 102-1   Filed 09/01/21   Entered 09/01/21 17:46:04   Desc
Exhibit A   Page 83 of 104

**EXHIBIT E**

<u>Dismissal</u>

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

---

| | |
|---|---|
| In re:<br><br>**BLACKJEWEL, L.L.C.,** *et al.*<br>　　　　　　　　　**Debtors**<br>----------------------------------------------------------- | **Chapter 11**<br>**Case No. 19-bk-30289**<br>**(Jointly Administered)** |
| **DAVID ENGELBRECHT, JOSIAH WILLIAMSON, GREGORY MEFFORD on behalf of themselves and all others similarly situated,**<br><br>　　　　　　　**Plaintiffs,**<br><br>**v.**<br><br>**BLACKJEWEL, L.L.C.,**<br><br><br>　　　　　　　**Defendants.**<br>----------------------------------------------------------- | **Adversary Proceeding**<br>**No. 3:19-ap-03002** |

---

| | |
|---|---|
| In re:<br><br>**BLACKJEWEL, L.L.C.,** *et al.*<br>　　　　　　　　　**Debtors**<br>----------------------------------------------------------- | **Chapter 11**<br>**Case No. 19-bk-30289**<br>**(Jointly Administered)** |
| **SHAWN ABNER, JACOB HELTON, AND BILLY HATTON on behalf of themselves and all others similarly situated,**<br><br>　　　　　　　**Plaintiffs,**<br><br>**v.**<br><br>**BLACKJEWEL, L.L.C., REVELATION ENERGY, LLC, LEXINGTON COAL CO., LLC, JEFF HOOPS, SR., JEFFERS A. HOOPS, II,**<br><br>　　　　　　　**Defendants.**<br><br>----------------------------------------------------------- | **Adversary Proceeding**<br>**No. 3:19-ap-03003** |

## <u>JOINT STIPULATION TO VOLUNTARILY DISMISS, WITH PREJUDICE</u>

Pursuant to F.R.C.P. 41(a)(1)(A)(ii), Plaintiffs David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton, on behalf of themselves and similarly situated class members (together, the "<u>Plaintiffs</u>"), together with Blackjewel, L.L.C. and Revelation Energy, LLC (together, the "<u>Debtors</u>" or "<u>Debtor-Defendants</u>") and Lexington Coal Co., LLC, Jeff Hoops, Sr., and Jeffery A. Hoops, II (the "<u>Non-Debtor Defendants</u>" and, collectively with the Debtor-Defendants, the "<u>Defendants</u>" and, together with the Plaintiffs, the "<u>Parties</u>") by and through their respective counsel, hereby jointly stipulate to the dismissal of the complaint and all claims against the Defendants in the above styled case, with prejudice. The dismissal of this case and the underlying claims is made pursuant to the Settlement, Release and Allowance of Claim Agreement, dated as of September 1, 2020 (the "<u>Settlement Agreement</u>" or "<u>Settlement</u>")[1] between the Parties, which was approved by this Court by the Final Settlement Order dated [_____], and shall not abate or limit the effectiveness of the Settlement Agreement and the Final Settlement Order, including the releases set forth therein.

Each Party is to bear their own costs and fees.

Dated: _____, 20__

Respectfully submitted,

THE GARDNER FIRM, P.C.

*/s/ Mary E. Olsen*
Mary E. Olsen
The Gardner Firm, P.C.
182 St. Francis Street, Suite 103
Mobile, Alabama 36602
Telephone: (251) 433-8100
Facsimile: (251) 433-8181

Stuart J. Miller, Esq.
Lankenau & Miller LLP
132 Nassau Street, Suite 1100
New York, New York 10038

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement.

2

Telephone: (212) 581-5005
Facsimile:  (212) 581-2122

Samuel B. Petsonk (WVSB # 12-418)
Petsonk PLLC
101 Ramey Court
PO Box 1045
Beckley, WV 25802
(304 )900-3171 (phone)
(304) 986-4633 (fax)
sam@petsonk.com

Bren J. Pomponio (WVSB #7774)
Clint Carte (WVSB #12054)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV 25301
(304) 344-3144
(304) 344-3145 (fax)
bren@msjlaw.org
clint@msjlaw.org

Ned Pillersdorf
Pillersdorf Law Office
124 West Court St
Prestonsburg, KY 41653
Phone: 606-886-6090
Fax: 606-886-6148

*Counsel for Plaintiffs and the Settlement Class*

AND

**SUPPLE LAW OFFICE, PLLC**
Joe M. Supple, Bar. No. 8013
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
Facsimile: 304.675.4372
joe.supple@supplelawoffice.com

**SQUIRE PATTON BOGGS (US) LLP**
*/s/ Stephen D. Lerner*
Stephen D. Lerner (admitted *pro hac vice*)
Nava Hazan (admitted *pro hac vice*)
Travis McRoberts (admitted *pro hac vice*)
201 E. Fourth St., Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
nava.hazan@squirepb.com
travis.mcroberts@squirepb.com

3

*Co-Counsel to the Debtors and Debtors-in-Possession*

**LEXINGTON COAL COMPANY, LLC**
*/s/ Helena R. Jackson*
Helena R. Jackson, Esq.
164 Main Street, Suite 401
Pikeville, Kentucky 41501
hj@lexingtoncoal.us
859.533.4901

**DINSMORE & SHOHL LLP**
*/s/ Alexis B. Mattingly*
Janet Smith Holbrook (WVSBN 5853)
John (J.H.) Harlan Mahaney (WVSBN 6993)
Alexis B. Mattingly (WVSBN 10286)
611 Third Avenue
Huntington, West Virginia 25701
(304) 529-6181 Phone
(304) 522-4312 Fax
Janet.holbrook@dinsmore.com
John.mahaney@dinsmore.com
Alexis.mattingly@dinsmore.com

*Counsel for the Non-Debtor Defendants*

4

## **Exhibit B**

### **Olsen Declaration**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re:<br><br>**BLACKJEWEL, L.L.C.,** *et al.*<br>        **Debtors**<br>---------------------------------------------------------<br>**DAVID ENGELBRECHT, JOSIAH WILLIAMSON, GREGORY MEFFORD on behalf of themselves and all others similarly situated,**<br><br>       **Plaintiffs,**<br><br>**v.**<br><br>**BLACKJEWEL, L.L.C.,**<br><br><br>       **Defendants.**<br>--------------------------------------------------------- | **Chapter 11**<br>**Case No. 19-bk-30289**<br>**(Jointly Administered)**<br><br><br><br>**Adversary Proceeding**<br>**No. 3:19-ap-03002** |
| In re:<br><br>**BLACKJEWEL, L.L.C.,** *et al.*<br>        **Debtors**<br>---------------------------------------------------------<br>**SHAWN ABNER, JACOB HELTON, AND BILLY HATTON on behalf of themselves and all others similarly situated,**<br><br>       **Plaintiffs,**<br><br>**v.**<br><br>**BLACKJEWEL, L.L.C.,  REVELATION ENERGY, LLC, LEXINGTON COAL CO., LLC, JEFF HOOPS, SR., JEFFERS A. HOOPS, II,**<br><br>       **Defendants.**<br>--------------------------------------------------------- | **Chapter 11**<br>**Case No. 19-bk-30289**<br>**(Jointly Administered)**<br><br><br><br>**Adversary Proceeding**<br>**No. 3:19-ap-03003** |

## DECLARATION OF MARY E. OLSEN

I, Mary E. Olsen, declare as follows:[1]

1.      I am a member of The Gardner Firm, PC, one of the law firms that represents David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton, on behalf of themselves and similarly situated class members (together, the "Plaintiffs"), who allege they were terminated from their employment without cause on or about July 1, 2019, and thereafter, along with most of the workforce who worked at the facilities in the Central Appalachian Coal Basin in West Virginia, Virginia and Kentucky (the "Eastern Division," encompassing approximately 1,100 employees) and in the Powder River Basin in Wyoming (the "Western Division," encompassing approximately 600 employees).

2.      On July 1, 2019 and July 24, 2019 (the "Petition Date"), the Debtors and certain affiliates initiated the Bankruptcy Case by filing voluntary petitions for relief in the United States Bankruptcy Court for the Southern District of West Virginia (the "Bankruptcy Court") under chapter 11 of title 11 of the Bankruptcy Code.

3.      Prior to the Petition Date, upon information and belief, the Debtors employed approximately 1,700 employees, both hourly and salaried, including the Class Members, in their business operations.

4.      On July 9, 2019 and thereafter, the Plaintiffs filed their Class Action Adversary Proceeding Complaints[2] (the "WARN Action") against the Defendants, in which the Plaintiffs asserted a class

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement, as defined below.
[2] The class WARN Act adversary proceedings which have been consolidated for the purposes of the Settlement are: *David Engelbrecht, Josiah Williamson and Gregory Mefford, on their own behalf and on behalf of all other persons similarly situated v. Blackjewel, LLC*; Adversary Proceeding No. 19-ap-3002 and *Shawn Abner, Jacob Helton and*

action claim under the WARN Act alleging that the Defendants as a "single employer" violated the WARN Act by implementing alleged plant closings or mass layoffs, without providing sixty (60) days advance written notice thereof.  The Class Representatives further asserted that, as a consequence of this alleged failure, the Class Members have a claim against the Defendants for damages for the alleged sixty (60) day violation period.  The WARN Action also includes wage and hour and other employment and employee benefits-related claims for the putative class members.  Finally, the WARN Action asserts that the alleged damages are entitled to priority status pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code up to the statutory maximum amount per claimant of $13,650.00 per employee pursuant to 11 U.S.C. § 507(a)(4) of the Bankruptcy Code (the "Statutory Cap").

5.      The Defendants deny these allegations and further deny that the Plaintiffs are entitled to any relief from them under any claims asserted in the WARN Action.

6.      On September 20, 2019, the Bankruptcy Court entered an order for the Parties to commence mediation with Magistrate Judge Omar Aboulhosn [D.I. 17, Case No. 19-ap-03002].

7.      On October 25, 2019, the Debtors provided the Plaintiffs with relevant wage information concerning the hourly and salaried employees whose employment Plaintiffs contend was terminated by the Debtors.

8.      On November 4, 2019, the parties mediated this matter before Magistrate Judge Omar Aboulhosn and although the WARN Action was not resolved at mediation, the Parties have been working since that date toward a resolution of this matter.  Following extended settlement

---

*Billy Hatton individually and on behalf of others similarly situated v. Blackjewel, LLC, Revelation Energy, LLC, Lexington Coal Co., LLC, Jeff Hoops, Sr., Jeffery A. Hoops, II*, Adversary Proceeding No. 19-ap-03003.

negotiations, conducted in good faith and at arms' length, the Parties reached agreement (the "Settlement Agreement" or "Settlement")[3] on a compromise that will resolve the WARN Action, subject to the Bankruptcy Court approval, according to the terms forth therein.

9.      In general, the Settlement Agreement provides for certification of a settlement class (the "Class") comprised of all persons who were employed by the Debtors at facilities located in the Eastern Division and the Western Division and who ceased working for the Debtors on or after July 1, 2019 solely, and who do not file a timely request to opt out of the Class.  The Class numbers approximately 1,561 Class Members and excludes the Debtors' employees who were brought back to work by the Debtors between the dates of July 1, 2019 and November 4, 2019. The Parties have agreed that Plaintiffs shall be named as Class Representatives and that my firm and the firms of Lankenau & Miller, LLP, Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf Law Office shall be appointed as Class Counsel. The Settlement Agreement provides that, upon the Effective Date, the Class shall be awarded (a) an allowed priority claim jointly and severally against the Debtors, as set forth on Schedule 1 to the Settlement Agreement, pursuant to 11 U.S.C. § 507(a)(4) and (a)(5), equal to sixty percent (60%) of sixty (60) days' wages and benefits for each Class member, in the total aggregate amount of $14,630,825.63, and an allowed priority wage claim under 11 U.S.C. § 507(a)(4) in the aggregate amount of $2,711,494.11 for up to eight (8) days of pay for each Class Member in resolution of their wage claims (together, the "Allowed Bankruptcy WARN and Wage Claims"), which amount shall be subject to the statutory cap of $13,650.00 per employee pursuant to 11 U.S.C. § 507(a)(4) (the "Statutory Cap");[4] and (b) a cash payment (the "Cash Payment") from the Non-Debtor Defendants totaling $125,000 ($75,000 to be paid by Jeff

---

[3] In the event of a conflict or inconsistency between the Settlement and this declaration, the Settlement will prevail over the declaration to resolve such conflict or inconsistency.

[4] To the extent any Class Members' Allowed Bankruptcy WARN and Wage Claims exceed the Statutory Cap, the balance shall be deemed a general unsecured claim.

Hoops, Sr. and Jeffery A. Hoops, II, jointly and severally, with the remaining $50,000 to be paid

by Lexington Coal Co., LLC).  The distributions from the Debtors' estates (the "Estates") on

account of the Allowed Bankruptcy WARN and Wage Claims (the "Estates Distribution

Payments") will be made by the Debtors in accordance with the priority scheme established by the

Bankruptcy Code  to a qualified settlement fund to be established by Class Counsel in conformity

with Internal Revenue Code § 468B (the "Qualified Settlement Fund") pursuant to written

instructions to be provided by Class Counsel. The Class acknowledges that the Allowed Bankruptcy

WARN and Wage Claims is an allowed claim to be paid in accordance with the priority scheme

established by the Bankruptcy Code and that such claim may or may not be paid depending on the

distributions available to creditors of the Debtors' Estates and may not be paid or funded in full.

The Cash Payment shall be made via wire transfer by the Non-Debtor Defendants within five (5)

business days of the Effective Date to the Qualified Settlement Fund pursuant to written

instructions to be provided by Class Counsel.  The name of the Qualified Settlement Fund shall be

*Engelbrecht v. Blackjewel QSF*, and Class Counsel or the Administrator of the Qualified

Settlement Fund shall provide the Debtors and the Non-Debtor Defendants with a W-9 form for

the Qualified Settlement Fund to enable the Estates Distribution Payments and the Cash Payment,

respectively to the Qualified Settlement Fund.

10.     The Settlement further provides that, in the event the amount of the Estates Distribution

Payments is sufficient to make a full payment on the Allowed Bankruptcy WARN and Wage

Claims, the total amount distributed to each Class Member on the Allowed Bankruptcy WARN

and Wage Claims shall equal the amount listed on Schedule 1 to the Settlement Agreement for

those claims.  In the event the amount of the Allowed Bankruptcy WARN and Wage Claims is

greater than the Estates Distribution Payments, the Class Members' distributions shall be reduced

on a *pro rata* basis so all Class Members receive an equal percentage of the Estates Distribution Payments. For the avoidance of doubt, the Class Counsel's Fees, Class Counsel's Expenses and the Class Representative Service Payments are payable solely out of the Qualified Settlement Fund, consistent with the terms of the Settlement Agreement, and such fees, expenses and payments are included in the amount of the Allowed Bankruptcy WARN and Wage Claims as set forth in Schedule 1 to the Settlement Agreement and not in addition to such amount.  The Class Representatives shall receive an aggregate one-time payment from the first distribution from the Qualified Settlement Fund of $30,000, to be allocated as follows:  $5,000 each to David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton for their service in this matter (together, the "Class Representative Service Payments").  Class Counsel shall distribute this payment to the Class Representatives, in addition to each Class Representative's individualized disbursements on account of the Settlement payments contemplated therein.[5]  Class Counsel's Fees will not be deducted from the Class Representative Service Payments.  Class Counsel is entitled to attorneys' fees ("Class Counsel's Fees") in the amount of one-third (1/3) of each distribution on the Estates Distribution Payments and Cash Payment, net of the one-time $30,000 aggregate payment for Class Representative Service Payments.  In addition, Class Counsel is entitled to its litigation expenses (including costs associated with the production and mailing of the Class Notice and the administration of the Settlement, estimated to be approximately $75,000) ("Class Counsel's Expenses").  Class Counsel's Fees and Class Counsel's Expenses, as well as the Representative Service Payments, shall be paid exclusively by the Qualified Settlement Fund.  Class Counsel's Fees and Class

---

[5] For avoidance of doubt, the Class Representative Service Payments shall have no affect on the priority amounts available to the Class Representatives for their individualized Allowed Bankruptcy WARN and Wage Claims.

Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter.

11.     The Settlement further provides that, upon the Effective Date, the Class Members (but not the Opt-Outs), for and on behalf of themselves, and their respective predecessors, successors, assigns, heirs, personal representatives and estates (collectively, the "Releasing Parties"), fully and forever release and discharge the Non-Debtor Defendants and each of the Estates and Debtors, and each of their respective current and former members, subsidiaries and affiliated entities, and each of their respective officers, directors, shareholders, agents, employees, partners, members, accountants, attorneys, insurers, financial advisors, representatives and other agents, and all of their respective predecessors, successors and assigns (collectively, the "Released Parties"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, at law, in equity and otherwise, whether known or unknown, anticipated, suspected or disclosed, which the Releasing Parties may now have or hereafter may have against the Released Parties which relate to or are based upon the WARN Act or any claim set forth in the WARN Action, including any claims relating to wages and benefits as described therein (the "Released Claims").  The Released Parties expressly reserve the right to object to, offset or oppose any and all claims, obligations, or causes of action, of any type, except those claims expressly allowed hereunder.  Upon the Effective Date, the Class Members agree that any Released Claims shall be deemed waived without need for further court order, and the Class Members agree that any Released Claims that have been scheduled on behalf of, or filed by, any Class Members in the Bankruptcy Case are disallowed in their entirety and shall be deemed expunged from the applicable schedule(s) or claims register(s). In addition, each Releasing Party shall be deemed, upon the Effective Date, to have released each

of the Class Representatives from any and all claims whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown that he or she may have against the Class Representatives, any successors or assignees to their legal interests, or any of their present or former agents, attorneys or consultants arising out of any Released Claim or the terms of the Settlement.  Proofs of claim filed by individuals who choose to timely opt-out of the WARN Class shall be unaffected by the release contained in the Settlement.

12.     Notwithstanding anything in the Settlement or in any pleadings relating to the Settlement, nothing in the Settlement or pleadings shall be deemed to constitute a release by the Debtors or any of their affiliates, or their Estates, of any claims whatsoever which such parties may have against the Non-Debtor Defendants or any third parties. Nothing in the Settlement or pleadings shall be deemed to constitute a release by the Non-Debtor Defendants or any of their affiliates of any claims whatsoever which such parties may have against the Debtors or any third parties.

13.     According to the Settlement, the Debtors agree to provide Class Counsel with an update every six (6) months as to (i) the amount of funds in the Debtors' Estates as of such date, (ii) the amount of outstanding claims asserted by creditors holding secured and administrative claims, and (iii) any potential recovery the Estates may obtain as of such date.

14.     If a Class Member decides not to participate in the Settlement, the Class Member need only fill out and submit the "opt-out" form according to the instructions and within the time limits approved by this Court.

15.     As set forth in the Settlement Motion, and as further supported by this declaration, and legal arguments set forth in the Settlement Motion, I submit that the proposed Class meets the

requirements of Rule 7023 of the Federal Rules of Bankruptcy and Rule 23 of the Federal Rules of Civil Procedure.

16.     With respect to the numerosity requirement of Fed. R. Civ. P. 23, based on the Debtors' records, there are approximately 1561 Class Members who fall within the agreed upon Class definition.  Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001).  "No single magic number exists satisfying the numerosity requirement." *Beherend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007) (citing *Moskovitz v. Loop*, 128 F.R.D. 624, 628 (E.D. Pa. 1989).  I submit that the proposed class of approximately 1561 Class Members easily meets the numerosity requirement and joinder of all Class Members is impractical. The Class is sufficiently numerous to make joinder of all members impractical, and thus satisfies the numerosity requirement.  *See Gates*, 248 F.R.D. at 440 (finding that two classes made up of 400 and 1,000, respectively, satisfied the numerosity requirement).  Accordingly, I submit that the Bankruptcy Court should find that the numerosity requirement is met.

17.     The commonality requirement requires existence of at least one question of law or fact common to the Class.  FED. R. CIV. P. 23(a)(2); *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  The commonality threshold is low (*Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007)), and does not require "an identity of claims or facts among class members," *Behrend*, 245 F.R.D. at 202.  Further, the existence of individual facts and circumstances will not defeat commonality so long as the Class Members allege harm under the same legal theory.  Here, I submit that fundamental issues of law and fact regarding unpaid wages,

notice of termination, applicability of several defenses, measure of damages and priority of claims

and attorneys' fees are common to all Class Members.[6]

18.     In my experience, and having been appointed as class counsel in more than seventy-five

WARN class actions, commonality has been found for class certification where class members

had different degrees of injury or even where defenses might exist only as to particular individuals.

Further, in my experience, class action suits under the WARN Act almost always involve a class

of plaintiffs who held different positions, were paid different amounts and who frequently were

terminated on different dates, from different locations.

19.     For these reasons, I submit that the commonality factor of Fed. R. Civ. P. 23(a)(2) is met

here.

20.     Typicality requires that the "named plaintiffs claims are typical, in common-sense terms,

of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."

FED. R. CIV. P. 23(a)(3); *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (quoting

*Baby Neal*, 43 F.3d at 55).  "Typicality requires a strong similarity of legal theories to ensure that

the class Representatives' pursuit of their own goals will work to benefit the entire class."  *Powers*,

245 F.R.D. at 236.  "Factual differences will not render a claim atypical if the claim arises from

the same event or practice or course of conduct that gives rise to the claims of the class members,

and if it is based on the same legal theory."  *Beck*, 457 F.3d at 295-296 (quoting *Baby Neal*, 43

F.3d at 55). The Class Representatives do not allege that they were singled out for disparate

treatment in the manner in which they were terminated.  Instead, they allege that they suffered

---

[6] Class Counsel recognizes that the amount of damages is particular to each Class Member.  However, individualized
damages calculations do not defeat commonality, "so long as the Plaintiff allege harm under the same legal theory."
*Baby Neal v. Casey*, 43 F.3d 48, 56-58 (3d Cir. 1994).

harm as a result of the same conduct that allegedly injured the absentee Class Members – they were allegedly terminated on or about July 1, 2019 without receiving sixty (60) days' notice and without being paid certain wages. Accordingly, I submit that the typicality requirement is met.

21.     With respect to adequacy, Class Representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Gates*, 248 F.R.D at 441. The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class Representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296. Thus, the court must determine "whether the Representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185.

22.     I submit that the Class Representatives and Class Counsel adequately represent the interests of the Class Members. The Class Representatives allege their employment was terminated during the relevant period and without sixty days advance written notice of termination. The Class Representatives had no involvement in the decision to allegedly terminate the employees' employment, nor did they have any involvement in the decision regarding the provision of WARN notices to the employees. The Class Representatives have no conflict of interest with the members of the Class.

23.     The Class Representatives have prosecuted the WARN claim, in spite of the stigma that can accompany being a named plaintiff in class litigation and in spite of the risk of retaliation by prospective employers. They have willingly assisted counsel throughout the litigation. In this case, the Class Representatives performed important services for the benefit of the Class by commencing the WARN Adversary and willingly assisting counsel throughout the litigation.

24.     Incentive or service payment awards to Class Representatives are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").  *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded").  The amount of the Class Representative Service Payments agreed to here is also consistent and on scale with amounts awarded in WARN class actions in bankruptcy courts across the country.  *See*, *Kettell v. Bill Heard Enterprises, Inc.*, Adv. Pro. No. 08-80153 (N.D. Ala. Bankr. 2008) (court approved service payments for two class representatives in the amount of $10,000 each. Service payments were approximately 1% of common fund); *D'Amico, et al. v. Tweeter, OPCO, LLC* and *Schultze Asset Management, LLC*, Adv. Pro. No. 08-51800 (Del. Bankr. 2008) (one class representative who was deposed received $15,000, the other two received $10,000 each. Service payments were approximately 3% of common fund); *Kohlstadt, et al, v. Solyndra*, Adv. Pro. No. 11-53155 (Del. Bankr. 2011)(class representatives received $7500 and $12,500, respectively, as service payments, which were approximately .6% of common fund); *Capizzi, et al., v. AWTR Liquidation Inc., f/k/a Rhythm and Hues, Inc.*, Adv. Pro. No. 2:13-ap-01209-NB  (C.D. Cal. Bankr. 2013)(class representatives received $10,000 each as service payments, which were approximately 2% of the common fund). Accordingly, I submit that the $30,000 aggregate service payment is appropriate and justified as part of the overall Settlement in light of the value of the Class Representatives' services to the Class and risks taken on behalf of the Class.[7]  Moreover, the

---

[7] In addition to the Class Representative Service Payments, the Class Representatives shall be authorized to participate in the Settlement as Class Members.

Defendants have agreed to the proposed award of the Class Representative Service Payments to the Class Representatives.

25.     Regarding the "predominance" requirement of Fed. R. Civ. P. 23(b), common questions of law and fact predominate over any individual issues.  Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  *Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09.  The proper predominance inquiry "trains on the legal or factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement."  *Amchem*, 521 U.S. at 623.  "In this vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named Representatives must be typical of the claims or defenses of the classes."  *Community Bank*, 418 F.3d at 309.

26.     I submit that just as typicality exists, predominance also exists in these cases.  All of the claims arise from an alleged violation of the WARN Act and an alleged failure to pay wages relating to employment terminations alleged to have occurred on or about July 1, 2019 and thereafter.  Accordingly, I submit that the predominance requirement is met.

27.     I also submit that "superiority" element of Fed. R. Civ. P. 23(b) is met.  Rule 23(b)(3) requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3); *Gates*, 248 F.R.D. at 443.  In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  *Krell v. Prudential Inc. Co. (In re Prudential Inc. Co.)*, 148 F.3d at 283, 316 (3d Cir. 1998).  Rule 23 sets forth several factors relevant to the superiority inquiry:  "(A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the

desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. However, when class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered. *Gates*, 248 F.R.D. at 443. Here, a class action is superior to individual actions. First, the amount of each Class Member's claim is relatively small. Individually, there is little incentive in controlling the prosecution of separate actions. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (quotation and citation omitted). It is appropriate that all the claims against the Defendants arising from the Class Representatives' allegations should be concentrated in this Bankruptcy Court. In addition, determining the claims of some Class Members, but not all, could prejudice the claims of the remaining Class Members. Accordingly, I submit that the superiority element is met.

28.     I, along with the proposed Class Counsel from the firms of Lankenau & Miller, LLP, Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf Law Office have had and will have responsibility for this matter.

29.     I am a 1990 graduate of the University of Alabama and a 1994 graduate of the University of Alabama School of Law. I was admitted to practice law before the courts of the State of Alabama in 1994 and the State of Florida in 1995. I am a partner at The Gardner Firm, PC. During my twenty-six years of law practice, I have been engaged primarily as a litigator handling cases including trials and hearings on a variety of legal matters including WARN and other employment

rights matters. Over the last nineteen years, I have been appointed and served as class counsel in more than seventy-five (75) WARN Act class actions nationwide.

30. M. Vance McCrary is also a partner with The Gardner Firm, P.C. He attended the University of Alabama School of Law, graduating in 2001. He is admitted to practice law in the state and federal courts of Alabama, as well as the Eleventh Circuit U.S. Court of Appeals and the U.S. Supreme Court. Mr. McCrary's practice focuses on the litigation of mass tort, class action, toxic tort and complex product liability claims. Mr. McCrary regularly litigates labor and employment cases before state and federal courts. Mr. McCrary has been lead class counsel in several state court class actions in Alabama. He has also served as co-lead class counsel in more than seventy (70) WARN Act cases on a nationwide basis.

31. Stuart Miller is a 1982 graduate of Brooklyn College and a 1987 graduate of Columbia Law School. He was admitted to practice before the courts of the State of New York in 1988. He has been engaged primarily as a litigator handling cases including trials and hearings on a variety of legal matters including WARN and other employment rights matters. Since August 1997, he has been appointed and has served as class counsel in more than one hundred (100) WARN Act cases.

32. Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf Law Office have collective experience in bringing class action litigation under ERISA and the WARN Act involving coal-mining layoffs in the Appalachian Region.

33. I submit that proposed Class Counsel are well-suited to serve as Class Counsel, they have no conflict of interest, and have diligently prosecuted the WARN Action and should be appointed Class Counsel.

Case 3:19-ap-03002   Doc 102-1   Filed 09/01/21   Entered 09/01/21 17:46:04   Desc
Exhibit B   Page 104 of 104

34.     I submit that the Class Notice attached to the Settlement will fairly apprise the class members of the nature of the dispute, the terms and benefits of the Settlement, of their right to opt-out of the Class, and of the effect of their decision not to opt-out of the class, namely, that they will be bound by terms of the proposed Settlement Agreement, including the releases of claims therein.  The Class Notice also includes my direct telephone number so that Class Members can call me, should they have any questions about the Settlement.

35.     The parties seek approval of service of the Class Notice by first class mail sent to the last known address of each Class Member as shown in the Debtors' books and records (or to such other address as the Class Members may indicate to Class Counsel or which Class Counsel may locate). As discussed in the Settlement Motion, I submit that service in this manner, and according to the proposed schedule, is proper.

36.     In view of the foregoing and the Settlement Motion, and the Class Notice attached to the Settlement, I ask the Bankruptcy Court to enter an order for the relief requested in the Settlement Motion, and to approve all aspects of the Settlement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on September 1, 2020 in Mobile, Alabama.

*/s Mary E. Olsen*
Mary E. Olsen