**EXHIBIT 18**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **In re:** <br><br> **BLACKJEWEL, L.L.C.,** *et al.* <br>        **Debtors** <br> ------------------------------------------------------- <br> **DAVID ENGELBRECHT, JOSIAH WILLIAMSON, GREGORY MEFFORD on behalf of themselves and all others similarly situated,** <br><br>        **Plaintiffs,** <br><br> **v.** <br><br> **BLACKJEWEL, L.L.C.,** <br><br><br>        **Defendants.** <br> ------------------------------------------------------- | **Chapter 11** <br> **Case No. 19-bk-30289** <br> **(Jointly Administered)** <br><br><br><br> **Adversary Proceeding** <br> **No. 3:19-ap-03002** |
| **In re:** <br><br> **BLACKJEWEL, L.L.C.,** *et al.* <br>        **Debtors** <br> ------------------------------------------------------- <br> **SHAWN ABNER, JACOB HELTON, AND BILLY HATTON on behalf of themselves and all others similarly situated,** <br><br>        **Plaintiffs,** <br><br> **v.** <br><br> **BLACKJEWEL, L.L.C., REVELATION ENERGY, LLC, LEXINGTON COAL CO., LLC, JEFF HOOPS, SR., JEFFERS A. HOOPS, II,** <br><br>        **Defendants.** <br> ------------------------------------------------------- | **Chapter 11** <br> **Case No. 19-bk-30289** <br> **(Jointly Administered)** <br><br><br> **Adversary Proceeding** <br> **No. 3:19-ap-03003** |

# DECLARATION OF SAMUEL B. PETSONK
# IN FURTHER SUPPORT OF APPROVAL OF THE SETTLEMENT

I, Samuel B. Petsonk, declare as follows:[1]

1. This declaration is submitted in further support of approval of the *Settlement, Release and Allowance of Claim Agreement* (the "Settlement Agreement" or "Settlement") (ECF Doc. No. 79-1) (*Abner, et al. v. Blackjewel*, Case No. 3:19-ap-3003), as requested in the Joint Motion, as amended, filed on January 17, 2021, by David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton, on behalf of themselves and similarly situated class members (together, the "Plaintiffs"), together with Blackjewel, L.L.C. and Revelation Energy, LLC (together, the "Debtors" or "Debtor-Defendants") and Lexington Coal Co., LLC, Jeff Hoops, Sr., and Jeffery A. Hoops, II (the "Non-Debtor Defendants" and, collectively with the Debtor-Defendants, the "Defendants" and, together with the Plaintiffs, the "Parties"), by and through their respective counsel, pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules"), applicable hereto by Bankruptcy Rule 7023 (the "Joint Motion"). (ECF Doc. No. 79) (*Abner, et al. v. Blackjewel*, Case No. 3:19-ap-3003).

2. I am an attorney with Petsonk PLLC, one of the law firms representing the Plaintiffs.

3. The Settlement, which is the subject of the Joint Motion, was preliminarily approved by the Court on January 21, 2021. (ECF Docs. No. 86 and 90) (*Abner, et al. v. Blackjewel*, Case No. 3:19-ap-3003).

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement, as defined below.

2

4. Pursuant to the Court's preliminary approval of the Settlement, the Plaintiffs were appointed as the Class Representatives and The Gardner Firm, P.C., along with Lankenau & Miller, LLP, Petsonk, PLLC, Mountain State Justice, Inc. and Pillersdorf Law Office were appointed as Class Counsel. *Id*.

5. The Court also approved the Class Notice, as modified, and the noticing procedure.

6. The team of lawyers representing the Plaintiffs and the Class in this case is highly skilled and experienced.

7. I have unique and substantial experience prosecuting WARN Act class actions, including specifically as to coal mining operations in the Southern District of West Virginia. This experience has been and will be a real benefit to the Class.

8. I worked with the other co-counsel, including Bren Pomponio of Mountain State Justice, Inc., and Ned Pillersdorf of Pillersdorf DeRossett and Lane, to research the underlying facts of this case by interviewing dozens of miners, drafting a complaint against both the Debtor and Non-Debtor Defendants that raised claims under both the WARN Act and also the state-specific wage-and-hour claims that all separately yielded appreciable value for the proposed class in the Settlement Agreement. Crucially, I also worked with those aforementioned co-counsel to develop testimonial and documentary support for the claims.

9. I worked to secure mediation with the Magistrate Judge for the Southern District of West Virginia who had successfully mediated four prior WARN Act claims brought by myself and co-counsel Bren J. Pomponio of Mountain State Justice, Inc.

10. The mediation in this case brought about a settlement with both Debtor and Non-Debtor Defendants that was substantially beneficial to the Plaintiffs and putative class.

11.　Co-counsel Bren J. Pomponio of Mountain State Justice, Inc. and I have served as class counsel for WARN classes on four prior occasions in cases involving layoffs at coal mines in West Virginia. *See Lester v. Pay Car Mining, Inc. et al.*, No. 5:17-cv-00740, slip op. at 17 (S.D.W. Va. June 6, 2018) (Ex. 6); *Treadway, et al., v. Bluestone Coal Corp., et al.*, No. 5:16-cv-12149, slip op. at 16 (S.D.W. Va. March 5, 2018) (Ex. 7); *Jordan v. Dynamic Energy, Inc., et al.*, No. 5:16-cv-04413, slip op. at 5 (S.D.W. Va. Oct. 21, 2016) (Ex. 8); *Ray v. Double Bonus Coal Co., et al.*, No. 5:15-cv-03014, slip op. at 21 (S.D.W. Va. May 3, 2016) (Ex. 9).

12.　The proposed class representative fees (or service payments) of $5,000 apiece in this case are reasonably commensurate with---and, in fact, are less than---the class representative fees approved in the four very similar WARN Act class settlements for coal miners with a comparable wage base in this region in the above-referenced cases where I have served as class counsel within the Fourth Circuit.

13.　Furthermore, I submit that the proposed Class Counsel fees in the amount of one-third (1/3) of each distribution on the Allowed Bankruptcy WARN and Wage Claims and Cash Payment, net of the one-time $30,000 aggregate payment for the six Class Representative Service Payments, plus Class Counsel's Expenses, are fair and reasonable. The Class Notice mailed to every Class Member fairly apprised them of these payments, and Class Members have been provided the opportunity to object to the reasonableness of the settlement, including the attorney fees and expenses sought and the Service Payment, and none have objected.

14.　At the time of this declaration, to the best of my knowledge and awareness, no objections to this settlement have been filed.

15.　Class Counsel has incurred, and will continue to, incur reasonable expenses and costs associated with the litigation of this case and the administration of the Settlement, if approved. These reasonable and necessary expenses (including the cost of administration of any

4

distributions) have been estimated at $75,000 ("Class Counsel's Expenses"). The bulk of Class Counsel's Expenses will be related to the administration of the Settlement, if approved, but it is unknown at this time whether there will be one distribution or multiple distributions to the Class.

16. The class administration expenses awarded in the four above-referenced WARN settlements were for classes with substantially fewer class members---ranging from 64 to 120. The class administration expenses in those four cases were $30,000.00, indicating the reasonableness of the expenses proposed in this case which involves a number of class members that is greater by an order of magnitude than the four aforementioned WARN classes.

17. An award of one-third of the common fund as an attorney's fee to class counsel is common in WARN Act class action settlements. See e.g., *Guippone v. BH S&B Holdings, LLC*, Case No. 09 Civ. 01029 (CM), 2011 U.S. Dist. LEXIS 126026, at *27-28 (S.D.N.Y. Oct. 28, 2011) ("[I]n more than 30 WARN actions class counsel was awarded a one-third fee." citing *In re Consolidated Freightways Corporation*, Case No. 02-24284-MG (Bankr. C.D. Cal.); *Powell v. Creighton Incorporated*, Case No. 1:01CV779 (M.D.N.C.); *In re CTC Communications Group, Inc.*, Case No. 02-12873 (PJW) (Bankr. D. Del.); *Madley v. Florida Cypress Gardens, Inc.*, Case No. 8:03-CV-00795-T-17TBM (M.D. Fla.); *In re Dollar Land, Inc.*, Case No. 02-14547 (Bankr. E.D. Pa); *Johnson v. GMAC Mortgage Group, Inc.*, Case No. C04-2004-LRR, (N.D. Iowa); *Morris v. Greenwood Mills. Inc.*, Civil Action No. 8:02-221-24, (D. S.C.); *In re Inacom Corp*, Case No. 00-2426 (PJW) (Bankr. D. Del.); *Teligent, Inc.*, Case No.: 01-12974(SMB) (S.D.N.Y.); *Bandel v. L.F. Brands Marketing, Inc.*, Civil Action No. 04 CV 1672 (CSH) (S.D.N.Y.); *Baker v. The National Machinery Company*, Case No. 3:02CV7444 (N.D. Ohio); *Deninno v. Penn American Coal Company, L.P.*, Civil Action No. 03-0320 (D. W.D. Pa.); *In re Pliant Systems, Inc.*, Case No. 01-01264-5 ATS (Bankr. E.D.N.C.); *Adkins v. Pritchard-Brown*, Case No. 5:03CV129-OC 10 GRJ, (M.D. Fla.); *Gibson v. Sonic Foundry, Incorporated*, Case No.

5

CV-03-4062 SVW (CD. Cal.); *In re Thomaston Mills, Inc.*, Case No. 01-52544 (RFH) (Bankr. M.D. Ga); *Ballentine v. Triad International Maintenance Corporation*, Case No. 0 1-1 0357 (E.D. Miss.); *Trout v. Transcom USA*, Case No. 1:03-cv-0537-LJM-WTL, (S.D. Ind.); *Padgett v. Wireless Retail, Inc.*, Case No. CV04 1170 PHX-SR, (D. Ariz.)). In addition to the cases cited by the *Guippone* Court, other courts have awarded a third of the common fund as attorneys' fees in WARN Act class action settlements. *See In re Quantegy*, Case No. 05-80042 (Bankr. M.D. Ala.); *Kizer v. Summit Partners, L.P.*, Case No. 1:11-CV-38 (E.D. Tenn. Jul. 10, 2012); *Nieves v. Community Choice Health Plan of Westchester, Inc.*, Case No. 7:08-CV-321 (S.D.N.Y. May 8, 2012); *Robbins v. Durham School Services, L.P.*, Case No. 1:09-CV-609 (W.D. Tex. May 31, 2011); *Hackworth v. Telespectrum Worldwide, Inc.*, Case No. 3:04-CV-1271 (S.D. W.Va. Aug. 3, 2006); *Knapp v. Badger Techs, Inc.* 2015 U.S. Dist. LEXIS 77186 (W.D.N.Y. 2015); *Mees v. Skreened, Ltd.*, 2016 U.S. Dist. LEXIS 1242 (S.D. Ohio 2016); *Bennett v. Roark Capital Group, Inc.*, 2011 U.S. Dist. LEXIS 48094 (D. Me. 2011); *D'Amico, et al. v. Tweeter, OPCO, LLC* and *Schultze Asset Management, LLC*, Adv. Pro. No. 08-51800 (Del. Bankr. 2008); *Kettell v. Bill Heard Enterprises, Inc.*, Adv. Pro. No. 08-80153 (N.D. Ala. Bankr. 2008); *Kohlstadt, et al, v. Solyndra*, Adv. Pro. No. 11-53155 (Del. Bankr. 2011); *Capizzi, et al., v. AWTR Liquidation Inc., f/k/a Rhythm and Hues, Inc.*, Adv. Pro. No. 2:13-ap-01209-NB (C.D. Cal. Bankr. 2013); *Whitehead v. Valmiera Glass USA Corp.*, Adv. Pro. No. 19-05247 (N.D. Ga. 2019); *Whisnant v. Schletter, Inc.*, Adv. Pro. No. 18-4003 (W.D. N.C. 2018).

18. The reasonableness of the requested one-third fee is not called into question by any objector in this case.

19. The reasonableness of the requested fee is further supported by the complexity of the pleadings, the facts, the large class size, the evidentiary development necessary to plead and maintain liability against the Defendants as alleged joint employers, which required a

6

particularized knowledge of the management structure of the mining industry and the specific alleged conduct of the Defendants in this case.

20.     The reasonableness of the fee is further supported by the complexities of the bankruptcy posture of this case, which required the undersigned to personally observe and participate in numerous hearings and negotiations during the early stages of this bankruptcy proceeding in the Huntington and Charleston Divisions of the Southern District of West Virginia in the summer and fall of 2019.

21.     WARN Act class action litigation is highly specialized and complex.  This case was no exception, and included motion practice, informal discovery, preparation for a mediation before Magistrate Judge Omar Aboulhosn and ultimately, preparation of the Settlement and the documents supporting approval.  Class Counsel has the requisite skill and experience to have ably represented the Plaintiffs and Class, and to continue to do so.   Undersigned, along with co-Class Counsel, have invested a significant amount of time in this matter, spanning more than a year and a half, for which they have not been paid due to the contingent nature of the case. Additional work will be necessary, dedicated toward the settlement approval process; responding to class member inquiries and coordination and assistance provided to the Settlement Administrator, should the Settlement be approved and one or more distributions made.

22.     The one-third fee sought by Class Counsel was agreed to by the Plaintiffs in their retainer agreements, and was approved by them during settlement negotiations.  Class Counsel's one third fee is appropriate in light of the results Class Counsel achieved and the risks involved (including the substantial risk of non-payment due to the ongoing bankruptcy and prospect of administrative insolvency).

23.     As shown above, one third of the settlement fund is customarily awarded in the context of WARN Act class settlements. In a bankruptcy like this one, there was (and still is) a

7

high risk that we might never be compensated for the work we have done if little or no distributions are made on the Allowed Bankruptcy WARN and Wage Claims. The Settlement itself reflects the recognition that this case was complex. The benefits provided by the Settlement to the Class are well within the range of reasonable outcomes in the case under the circumstances. Society has a great stake in rewarding attorneys who produce such benefits. Society, not just the individual workers, is burdened when mass layoffs and plant closings occur without adequate and proper notice and opportunity for worker retraining. Government and communities are badly impacted. Further, because a typical WARN Act claimant, who has just lost his/her job, lacks the resources to hire counsel on anything other than a contingency fee basis, attorneys that accept such cases take on huge risks of receiving no fee and no reimbursement of expenses. Society benefits when attorneys agree to take such risks. If attorneys did not take such risks, it would be highly unlikely that legitimate WARN Act claims would be asserted and vindicated. Such risks must be rewarded appropriately if attorneys are to be incentivized to litigate cases on behalf of citizens of communities disrupted by mass layoffs and plant closings

24. In the plaintiff's employment law arena, the typical contingency fee retainer requires clients to consent to a fee of forty percent of the gross recovery – a percentage higher than that sought by Plaintiffs' counsel in this case. Importantly, my firm regularly spends many hours each year investigating WARN Act and other employment-related inquiries which do not result in litigation and for which we are not compensated. Additionally, by their nature, WARN Act and similar employment cases present a high degree of risk of non-recovery. Thus, over the years, I have litigated many cases in which defendants were ultimately unable or unwilling to pay, so that we received no fee for our work or a substantially delayed payment. Undersigned submits that the fees and projected expenses sought here are reasonable and should be approved.

8

25. As noted above, the Service Payments of $5,000 each to the Plaintiffs for their services rendered in this action should also be approved. Incentive payments are fairly typical in class actions and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action. *See supra, cf. Berry, et al. v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)). Here, Plaintiffs stepped forward to bring the WARN Action in their own names on behalf of their former co-workers, and potentially be deposed and testify, if required. Plaintiffs agreed to do so at a point when their futures were uncertain and employment prospects potentially dimmed by suing their former employer. Without the efforts of Plaintiffs, there would not have been any recovery for the Class. As the Court is likely aware, this lawsuit is searchable on the Internet and may become known to prospective employers evaluating the Plaintiffs for employment. Plaintiffs expended time and effort to assist with the preparation of the complaint in this matter. They assisted in the ongoing investigation of the claims. All of these contributions were material to the Parties being able to ultimately reach a settlement. Plaintiffs performed important services for the benefit of the Class in commencing the litigation and working with Class Counsel. Further, Plaintiffs benefitted the Class through their willingness to sit for deposition, had they been noticed for one.

26. The amount of the Service Payments agreed to here (i.e., less than 1% of the Allowed Bankruptcy WARN and Wage Claims) is also well within the range of amounts awarded in WARN class actions in courts across the country. *See D'Amico, et al. v. Tweeter, OPCO, LLC* and *Schultze Asset Management, LLC*, Adv. Pro. No. 08-51800 (Del. Bankr. 2008) (one class representative who was deposed received $15,000, the other two received $10,000 each. Service payments were approximately 3% of common fund); *Kettell v. Bill Heard Enterprises, Inc.*, Adv. Pro. No. 08-80153 (N.D. Ala. Bankr. 2008) (court approved service

9

payments for two class representatives in the amount of $10,000 each. Service payments were approximately 1% of common fund); *Kohlstadt, et al, v. Solyndra*, Adv. Pro. No. 11-53155 (Del. Bankr. 2011)(class representatives received $7500 and $12,500, respectively, as service payments, which were approximately .6% of common fund); *Capizzi, et al., v. AWTR Liquidation Inc., f/k/a Rhythm and Hues, Inc.*, Adv. Pro. No. 2:13-ap-01209-NB (C.D. Cal. Bankr. 2013)(class representatives received $10,000 each as service payments, which were approximately 2% of the common fund); *Whitehead v. Valmiera Glass USA Corp.*, Adv. Pro. No. 19-05247 (N.D. Ga. 2019)(court approved $5,000 Service Payments to the Class Representatives, representing less than 1% of the WARN settlement); *Whisnant v. Schletter, Inc.*, Adv. Pro. No. 18-4003 (W.D. N.C. 2018)(Court approved $5,000 service payment to the Class Representative, which was less than 2% of the allowed WARN settlement claim).

27. Accordingly, the proposed Service Payment of $5,000 to each of the Plaintiffs is appropriate and justified in light of the value of their services to the Class and the risks, as well as personal burdens, taken on behalf of the Class.

28. In view of all of the foregoing, as well as the Joint Motion in support of the Settlement and all attachments thereto, (ECF Doc. No. 79), I concur with the Debtors and my co-counsel in asking the Court to approve the Settlement as fair, reasonable, adequate, and negotiated at arm's length with the assistance of a neutral mediator.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February 28, 2021

                                                          /s/ *Samuel B. Petsonk*
                                                          Samuel B. Petsonk, Esq. (WVSB # 12-418)

Petsonk PLLC
P.O. Box 1045
Beckley, WV 25802
sam@petsonk.com
(304) 900-3171 (phone)
(304) 986-4633 (fax)

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 28th Day of February, 2021, I filed the forgoing with the Court via CM/ECF thereby causing service on counsel of record upon all counsel of record.

          /s/ *Samuel B. Petsonk*
          Samuel B. Petsonk (WVSB 12-418)

11